**Walter B. Slayton, Jr., and Velma J. Slayton, Individually and as Guardians for David B. Slayton v.**
**Ford Motor Company, Richard Brunig, Arthur Brunig, J. Max Rabe and Karen Rabe, Crakim, Inc., formerly known as Jacobsen Manufacturing, and Textron, Inc.**

[435 A.2d 946]

No. 315-79

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed July 14, 1981

Motion for Reargument Denied August 14, 1981

*John T. Sartore* of *Paul, Frank & Collins, Inc.,* Burlington, for Plaintiffs.

*Barbara E. Cory* of *Dinse, Allen & Erdmann,* Burlington, for Defendants.

**Underwood, J.** On June 5, 1975, David Slayton, then age 6, was severely injured when a lawn and garden tractor equipped with a rotary mower backed over his legs. David's parents brought suit individually and on his behalf against the operator of the tractor, the owner/entruster of the tractor, the owners of the property on which the accident occurred, and the manufacturer of the tractor. Ford Motor Company was originally named as the manufacturer. The tractor was manufactured for Ford by Jacobsen Manufacturing Company, who later sold its lawn tractor business to Textron, Inc., and changed its corporate name to Crakim, Inc. Textron and Crakim were added as defendants with the consent of the other parties.

During the trial, the plaintiffs reached a monetary settlement with all of the defendants except the appellees, Ford, Textron and Crakim. The judge informed the jury of the amount of the settlement, and the trial continued against the corporate defendants. The defendants later called David's father as a witness, and questioned him about the settlement with the other defendants. The plaintiffs objected to this examination, but it was permitted by the court.

At the end of the trial, the court, over the objection of the plaintiffs, again informed the jury of the amount of the settlement, and instructed it to deduct that amount from the plaintiffs' damages, should they find the remaining defendants liable. The jury was given written interrogatories on the issues of comparative negligence and damages, but found none of the defendants liable on any theory presented, and therefore never reached those issues. The plaintiffs appeal.

The plaintiffs argue that the trial court erred in admitting evidence of the fact and the amount of the settlement, and in instructing the jury to deduct the settlement from any award of damages. The question is whether the judge or the jury should perform the calculation when a damage award against one tortfeasor must be reduced by the amount of a settlement between the plaintiff and another tortfeasor.

■ It has been the custom in Vermont for the court to permit the jury to perform the necessary calculation. However, only the existence of the custom has been recognized by this Court. Its propriety has never been directly addressed. See, e.g., *Quesnel* v. *Raleigh*, 128 Vt. 95, 100, 258 A.2d 840, 843 (1969); *Stevens* v. *Nurenburg*, 117 Vt. 525, 534, 97 A.2d 250, 257 (1953).

■ We declare it to be the policy of the Court henceforth that where there has been a liquidated settlement between one of several defendants and a plaintiff under a covenant not to sue, a partial release, or the like, the jury not be informed of such fact, or the sum paid, and that it be the function of the court, on motion of the defendant following the verdict, to find the amount by which such verdict should be reduced.

In most of the recent, pertinent cases, courts have held that these calculations should be performed by the court after the jury has determined the plaintiff's total damages. See, e.g., *Luth* v. *Rogers & Babler Construction Co.*, 507 P.2d 761 (Alaska 1973); *Egurrola* v. *Szychowski*, 95 Ariz. 194, 388 P.2d 242 (1964); *Brooks* v. *Daley*, 242 Md. 185, 218 A.2d 184 (1966); *McCombs* v. *Stephens*, 252 S.C. 442, 166 S.E.2d 814 (1969). Some courts, in adopting the "court rule," expressly overruled or limited earlier cases which had endorsed the "jury rule." See, e.g., *Pease* v. *Beech Aircraft Corp.*, 38 Cal. App. 3d 450, 113 Cal. Rptr. 416 (1974); *Orr* v. *Coleman*, 455 S.W.2d 59 (Ky. 1970); *Silisky* v. *Midland-Ross Corp.*, 97 Mich. App. 470, 296 N.W.2d 576 (1980). Some courts still apply the "jury rule." See generally Annot., 94 A.L.R.2d 352, 360–73 (1964).

If the jury is informed of either the fact or the amount of a settlement, there is a danger that it will draw improper inferences. A jury might conclude that the settling defendant was the party primarily responsible for the injury, and that

the remaining defendants should therefore be exonerated. *De Lude v. Rimek*, 351 Ill. App. 466, 473, 115 N.E.2d 561, 565 (1953). It might take the amount of the settlement as a measure of the plaintiff's damages. *Orr* v. *Coleman, supra,* 455 S.W.2d at 61. It might consider one defendant's settlement to be an admission of negligence, and then impute this negligence to a nonsettling defendant. *Azure* v. *City of Billings,* 596 P.2d 460, 466 (Mont. 1979).

The "jury rule" draws objections from both plaintiffs and defendants. As was stated in *Luth* v. *Rogers & Babler Construction Co., supra,* 507 P.2d at 768:

> submitting the matter to the jury might prejudice the unreleased defendant, for the jury might imply his negligence from the virtual admission of negligence by the covenantee. The jury method also creates the risk that payment of money for a covenant might be considered evidence of the covenantee's total responsibility for the injury and of the defendant's freedom from fault. . . . [P]olicies encouraging extrajudicial settlements will be frustrated.

The problem with the "jury rule" is ably diagnosed in *De Lude v. Rimek, supra,* 351 Ill. App. at 473–74, 115 N.E.2d at 565.

> It is well understood by lawyers and judges experienced in such matters that in a case where evidence is offered of the payment of a substantial sum for a convenant not to sue, the jury considers it evidence that the covenantee is the party responsible for the injury, and that the defendant or defendants should be exculpated. Hence, there is always an effort on the part of the defense to put the covenant before the jury and to make the most of it during the course of the trial.
>
> . . . .
>
> While the amount paid under a covenant not to sue should be deducted from the total damages sustained, we hold it is the function of the jury to find the plaintiff's total damages, and the function of the judge, upon application of the defendant after verdict, to find the amount by which such verdict should be reduced by virtue of any

covenant made by the plaintiff with another concerned in the commission of the tort.

Prior to statutory enactment of the "court rule," Connecticut used the "jury rule." In discussing the change effected by the statute, the court observed that "the disclosure of such covenants to the jury was often more prejudicial than probative, and was of questionable utility since the mathematical adjustment of the verdict could readily be effected by the court alone." *Fritz* v. *Madow*, 179 Conn. 269, —, 426 A.2d 268, 269 (1979). See also *Brooks v. Daley, supra*, 242 Md. at 193, 218 A.2d at 188–89.

Use of the "jury rule" creates a possibility of confusion and prejudice on the part of the jury. There is no compelling reason to adopt it, and the risk of error is high. If there is even a chance of miscarriage of justice, or if verdicts are more likely to be set aside, why run that risk? Adherence to the "jury rule" also has a chilling effect on extrajudicial settlements. The "court rule" is therefore preferable because it prevents confusion and prejudice, while still encouraging settlements.

█ A close examination of the record, however, rules out the possibility of prejudice or confusion in this case. By the time of trial, three of the four defendants had settled out. The operator of the mower, the owner/entruster of the mower, and the landowner had all made their peace with the plaintiff. Only the manufacturer of the mower, Ford (in its various corporate forms), remained as a defendant.

The court instructed the jury on the only remaining issues: comparative negligence, strict products liability and compensatory and punitive damages, each as it related to the manufacturer. The court also submitted written interrogatories to the jury, to aid them in determining comparative negligence, if any, as well as general verdict forms for both a plaintiffs' and a defendants' verdict. The jury answered the interrogatories in part only. It indicated that the defendant was not guilty of a negligent act which had been the proximate cause of the plaintiff's injury, that the defendant's act was neither reckless nor wanton, and that the product was not unreasonably dangerous at the time of manufacture or sale.

It is clear that any causal connection between the act of Ford and the injury to the plaintiff was superseded by the act of entrusting the operation of the mower to a retarded person.

The facts in this case thus preclude the possibility of prejudice or confusion. I would therefore join (if not create) both "majorities"; that which votes to reject the "jury rule," and that which votes to affirm.

*Judgment affirmed.*

**Larrow, J.,** concurring in result. I have no difficulty in affirming the instant case. It is certainly true, as the majority opinion states, that the facts preclude any possibility of prejudice or confusion. See *State* v. *Olds*, 141 Vt. —, 443 A.2d 443 (1982). To say that an out-of-court settlement with individual defendants quite clearly at fault would prejudice a jury in favor of large corporate defendants is indeed the "ivory tower" approach, ignoring the facts of life and all logical considerations. I cannot subscribe to such an approach.

But neither can I subscribe to the "policy" approach of leaving the simple mathematics involved to the court, merely to be in line with "recent" cases. I have respect for both the doctrine of stare decisis and the common sense of juries, and I am not convinced of the wisdom of the dictated future "policy."

Even if the enunciated policy, carefully confined to a "liquidated" settlement, were a desirable one, the manner of its adoption, in a case where it is not required to reach the ultimate result, is undesirable. Its adoption, if there is to be such, should be through the rule-making process, after careful consideration by our Civil Rules Advisory Committee, opportunity for public comment, and recommendation. To create an amendment procedure and then summarily abandon it is judicial vagary at its worst. The appropriate procedure would give birth to a complete policy, rather than dealing with only one of several possibilities. The "policy" adopted in this case leaves a trial court completely without guidance in the situation where (a) the terms of a settlement are disputed rather than conceded, and (b) where the settlement is in kind rather than monetary, and the reasonable value of the consideration is in dispute. In cases where there is a constitutional right of jury trial, the use of the "court method" may well be pre-

cluded in the presence of disputed factual issues. In any event, resort to the rule-making process would birth a product more comprehensive, understandable, and better considered.

I am authorized to say that Chief Justice Barney joins in this concurrence.

**Billings, J., dissenting.** I am unable to reach the illogical and internally inconsistent result of the majority opinion. I concur in the Court's holding that where at least one co-defendant has made a liquidated settlement the "court method" of computing damages must be used in order to avoid improper inferences, confusion and prejudice. In the case at hand it is impossible to determine whether the jury was confused, made improper inferences or was prejudiced by the court advising the jury of the settlement, since one cannot invade the sanctity of the jury room. The majority blithely ignores this fact. I would reverse and remand for new trial.

The concurring opinion, while indicating that the "jury method" should be re-examined by the rules committee, would merely continue to adhere to an antiquated policy previously followed by a few, but not all, of the trial courts although never directly addressed by this Court.

I am authorized to say that Mr. Justice Hill joins in this dissent.