# Herman J. Sampson v. John C. Karpinski, d/b/a J. Karpinski's Market v. Twin State Fruit Corporation and Falstaff Brewing Corporation

[515 A.2d 1066]

No. 84-020

Present: **Hill, Peck, Gibson and Hayes, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed August 8, 1986

*Thomas P. Salmon* and *Lawrence G. Slason* of *Salmon & Nostrand*, Bellows Falls, for Plaintiff-Appellee.

*John J. Boylan, III*, and *Scott A. Whitted* of *Kiel & Boylan*, Springfield, for Defendant-Appellee Karpinski.

*Robert R. McKearin* of *Dinse, Allen & Erdmann*, Burlington, for Defendant-Appellee Twin State Fruit Corp.

*Fitts, Olson, Carnahan, Anderson & Bump*, Brattleboro, and *Howard E. Walker* of *Hinckley & Allan*, Providence, Rhode Island, for Defendant-Appellant Falstaff Brewing Corp.

**Gibson, J.** This is an appeal from a judgment in a products liability action tried before a jury in the Windham Superior Court. The jury returned a verdict against defendants Twin State Fruit Corporation (Twin State) and Falstaff Brewing Corporation (Falstaff) in the sum of $100,000; the trial court entered judgment on the verdict. Judgment was entered against J. Karpinski's Market (Karpinski) on the basis of a settlement agreement between the plaintiff and Karpinski. Falstaff appeals, requesting a new trial. We reverse and remand.

In August of 1979, plaintiff Herman Sampson bought four quart bottles of Narragansett beer from defendant Karpinski. When plaintiff returned home, he opened two of the quart bottles and drank directly from one of them. Plaintiff spit the substance out when it caused a burning sensation in his mouth. He went to the hospital emergency room where it was determined that his mouth, throat, and esophagus had been burned. Analysis of the substance in the bottle revealed it to be lye with a pH factor of 14.

Plaintiff filed a complaint against defendant Karpinski; Karpinski impleaded for indemnification purposes its distributor, Twin State, and the brewer, Falstaff. Twin State crossclaimed against Falstaff, also seeking indemnification. Plaintiff subsequently amended his complaint to add direct claims against Twin State and Falstaff. A jury was drawn on September 20, 1983, and the trial was set for October 18, 1983.

Just prior to trial, plaintiff and Karpinski entered into a covenant not to sue. The agreement provided that (1) Karpinski would pay plaintiff the sum of $25,000; (2) "the Court may remove the issue of Karpinski's liability from consideration of the jury—and may direct a verdict in favor of Sampson against Karpinski"; (3) Karpinski was to remain in the case to prosecute its indemnification claims against Twin State and Falstaff, and Sampson agreed to continue to prosecute its claims against Twin State and Falstaff; and (4) any sums received by Sampson as a result of settlement with Twin State or Falstaff were to be applied first to the $25,000 paid by Karpinski.

In response to this agreement, Falstaff filed motions to realign Karpinski as a plaintiff and to inform the jury of the settlement agreement. Although the trial court refused to realign Karpinski as a plaintiff, Karpinski's counsel was placed at a separate table and plaintiff's witnesses were deemed friendly to Karpinski. The

trial court did not apprise the jury of the agreement; instead, in both its preliminary statement and final charge, the court informed the jury that it had directed a verdict against Karpinski, and that Karpinski remained in the case to pursue its indemnification claims against Twin State and Falstaff.

After trial, the jury rendered a verdict of $100,000 in favor of plaintiff against Twin State and Falstaff, and in favor of Karpinski and Twin State on their claims for indemnification. The judgment order reflected the terms of the agreement between plaintiff and Karpinski.

Falstaff argues on appeal that the trial court erred (1) when it informed the jury that it had directed a verdict against Karpinski in its preliminary statement and final charge; and (2) when it refused to tell the jury that plaintiff and Karpinski had entered into a settlement agreement.

Karpinski argues that Falstaff did not adequately preserve its right to appeal the first issue by failing to object to the directed verdict below. We cannot adopt such a technical reading of the transcript. The record reveals that the trial court was well aware of Falstaff's concern that its bald statement directing a verdict against Karpinski without explanation would have a prejudicial effect upon Falstaff's defense. This is apparent from the transcript of the charge conference when the court stated:

> his argument is this, that they are going to infer that I directed a verdict of liability—that I felt that you [Karpinski] were liable and that therefore they are going to be liable on the other end—that the Court has made a determination here. . . . Because if they know or suspect that the Court directed a verdict against Karpinski I think they are going to go after Twin State and also after Falstaff. I just have that impression.

Further, after the court charged the jury, Falstaff objected:

> We believe the charge as given re-emphasized the situation that a directed verdict has been given to Karpinski without mentioning—or against Karpinski—without mentioning that it was because of a settlement. We believe that the instruction . . . about a settlement was appropriate as necessary to prevent extreme prejudice to our position.

The issue was adequately presented to the court below and we will address it on appeal.

In *Slayton v. Ford Motor Co.,* 140 Vt. 27, 29, 435 A.2d 946, 947 (1981), this Court

> declare[d] it to be the policy of the Court . . . that where there has been a liquidated settlement between one of several defendants and a plaintiff under a covenant not to sue, a partial release, or the like, the jury not be informed of such fact, or the sum paid, and that it be the function of the court, on motion of the defendant following the verdict, to find the amount by which such verdict should be reduced.

See also *Vermont Union School District No. 21 v. H. P. Cummings Construction Co.,* 143 Vt. 416, 431, 469 A.2d 742, 751 (1983). Among the reasons given for the adoption of the rule was the fear that, if informed of the fact or amount of the settlement, the jury would draw improper inferences. *Slayton, supra,* 140 Vt. at 29, 435 A.2d at 947. For instance, it might conclude that the settling defendant was the party primarily responsible for the injury, and that the remaining defendants should be exonerated; it might consider the settlement to be an admission of negligence, and then impute this negligence to a nonsettling defendant; or it might take the amount of the settlement as a measure of plaintiff's damages. *Id.* at 29-30, 435 A.2d at 947. Thus, the Court's primary concern in establishing the policy set forth in *Slayton* was clearly to minimize the possibility that the jury would be misled. Under that policy, the Court contemplated that no information should be given to the jury that might lead it to conclude that the liability of any of the defendants had been established before they retired to consider their verdict.

At the beginning of the trial in this case, the court made the following statement to the jury:

> I have ruled as a matter of law that the defendant Karpinski . . . is liable to the plaintiff in this matter. You people have had nothing to do with that. I've done it as a matter of law based on the pleadings.
>
> Now, I want you to understand that by my doing that it should not affect your decision insofar as the other two defendants are concerned. . . .

Now, you will note that Karpinski's lawyer is still here in the courtroom. And I'm going to tell you why he is still here in this case. He's here first of all because you people are to determine the amount of damages Mr. Sampson is entitled to and secondly, because Mr. Karpinski has counterclaimed against both Twin State and Falstaff, the defendants, saying in effect to the plaintiff if I am liable to you then Falstaff and Twin State are liable to me.

The final charge to the jury was as follows:

> Now, prior to trial the Court directed a verdict against Mr. Karpinski. In doing this the Court ruled as a matter of law that the plaintiff, Mr. Sampson, was prevented from pursuing his claim against Karpinski in this trial. The Court's action does not prevent you the jury from determining Karpinski's right to indemnification. I will say more about this later.
>
> That action by the Court has nothing to do with what you the jury has to decide. Do not even consider the action taken by the Court when you decide whether the other two defendants, Twin State and Falstaff, are liable to the plaintiff in this action. The fact that a verdict was directed against Mr. Karpinski in no way affects the liability of the other two defendants.
>
> The Court's action does not indicate any findings or beliefs on the Court's behalf as to the merits of this particular action.

By directing a verdict against defendant Karpinski in the manner that it did, the court in effect told the jury that plaintiff's story was true. Further, the court's cautionary instruction as to the limited effect of the directed verdict did little to minimize the prejudicial impact of the statement. Karpinski had been aligned as a defendant during jury selection. At trial, Karpinski's counsel sat at a separate table and the jury was told that he was liable to the plaintiff. The issue of plaintiff's credibility was thus effectively removed from the jury's consideration, to the inevitable prejudice of defendants Twin State and Falstaff. Under the circumstances of this case, the trial court's attempt to comply with the ruling set forth in *Slayton* resulted in the evisceration of Falstaff's right to a fair trial.

The problem before us here was not addressed in *Slayton*. Although the Vermont Rules of Evidence were not in effect at the time of the *Slayton* trial, they were in effect at the time of the trial herein. V.R.E. 408 addresses concerns at issue in this case. Rule 408 states that

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, the invalidity of, or the amount of the claim or any other claim.

It also provides, however, that exclusion is not required "if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." V.R.E. 408.[1]

■ Under V.R.E. 408, it is clear that the *Slayton* rule is not absolute or unyielding. Like so many of our rules, when the protective purpose is converted into a prejudicial sword, the presiding judge must be given the discretionary authority to dispel the evil, having in mind that his or her actions have to be sustainable in the face of the objectives of *Slayton*. We conclude that in cases where, as here, strict adherence to that portion of the *Slayton* rule stating that the fact of settlement is not to be disclosed to the jury has unfair and prejudicial results, admission of sufficient evidence to alleviate that prejudice is within the sound discretion of the trial judge, and is not to be considered automatic error. See *Belton v. Fibreboard Corp.,* 724 F.2d 500, 505 (5th Cir. 1984); *Greenemeier v. Spencer,* 719 P.2d 710, 715-16 (Colo. 1986); *Degan v. Bayman,* 86 S.D. 598, 607, 200 N.W.2d 134, 139 (1972); *Groves v. Compton,* 280 S.E.2d 708, 711-12 (W. Va. 1981).

In *Belton, supra,* 724 F.2d at 501, all but one defendant had settled with the plaintiff; none of the settling defendants were present at trial. Upon consideration of the particular facts before it, the court stated that

---

[1] The Reporter's Notes to Rule 408 state that "the rule is not intended to change the direction of [*Slayton*] which held that any settlement amount paid by a joint tortfeasor should not be disclosed to the jury but should be subtracted by the judge from the jury verdict . . . ." Our holding today does not affect this aspect of the *Slayton* holding.

The trial court's ruling that the fact of settlement by fifteen co-defendants was admissible did not violate Rule 408 because the evidence was not offered to prove liability or the amount of damages. Because Pittsburgh Corning intended to prove that Belton and Crochet had been exposed to the products of the other defendants, the trial court decided that the settlement evidence was necessary for the purpose of explaining why those parties were not in court. The court duly charged the jury that it was not to consider the evidence in reaching a verdict. . . . [I]n the instant case, we hold that the trial court's admission of the evidence to prevent confusion of the jury was not an abuse of discretion.

*Id.* at 505 (construing Fed. R. Evid. 408).[2] Although the facts of *Belton* are not directly on point, the court's analysis is equally applicable here.

■ We recognize that "there is no solution to the problem of the information to be given to a jury concerning settlement that will provide ironclad assurance against prejudice in every case." *Greenemeier, supra,* 719 P.2d at 716. Nevertheless, the trial court is in the best position in a given case to determine whether, on the circumstances before it, prejudice is more likely to occur by informing the jury of the fact of settlement or by excluding it from its consideration. See *John McShain, Inc. v. Cessna Aircraft Co.,* 563 F.2d 632, 635 (3d Cir. 1977) (evidence admissible under Fed. R. Evid. 408, subject to Fed. R. Evid. 403 weighing process); *Dongo v. Banks,* 448 A.2d 885, 890-91 (Me. 1982) (construing Maine Rules of Evidence 408 and 403); V.R.E. 403. If the jury is informed of the fact of settlement, the court must clearly instruct the jury to disregard the settlement when determining liability and damages, that the court will make any adjustments in the verdict required as a result of settlement, see *Belton, supra,* 724 F.2d at 502, and that the credibility of all the parties, including those participating in the settlement, is still before them for their consideration.[3]

---

[2] The pertinent portions of V.R.E. 408 are similar in language and effect to Fed. R. Evid. 408.

[3] Twin State asks this Court to limit the scope of the retrial to a consideration of plaintiff's claims against defendants by leaving the indemnification verdicts intact. Inasmuch as Twin State has failed to demonstrate that the issues are sufficiently distinct to warrant a partial reversal, we decline to do so.

*Reversed and remanded.*