**Gary A. Gilman v. Towmotor Corporation & Liberty Mutual Insurance Company**

[621 A.2d 1260]

No. 90-531

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 25, 1992

Motion for Reargument Withdrawn March 5, 1993

*Thomas W. Costello*, Brattleboro, and *Peter N. Munsing* of *Mayerson, Munsing, Corchin, Rosato & Ostroff, P.C.*, Spring City, Pennsylvania, for Plaintiff/Cross-Appellant.

*Robert D. Rachlin* and *Robert A. Miller, Jr.*, of *Downs Rachlin & Martin*, Burlington, for defendant-appellant Towmotor Corporation.

*Robert P. Gerety, Jr.*, and *William D. Gillis* of *Plante, Hanley & Gerety, P.C.*, White River Junction, for Defendant-Appellee Liberty Mutual Insurance Company.

**Morse, J.** Plaintiff sought recovery for injuries he sustained at his place of employment when a forklift holding a large vat of glue tipped over. The jury awarded plaintiff nearly $280,000 in damages on a strict liability claim against defendant Towmotor Corporation, the forklift manufacturer. To that amount, the court added interest at the statutory rate of 12% per annum plus costs, for a total judgment of approximately $400,000. The jury also returned a verdict in favor of defendant Liberty Mutual Insurance Company, the workers' compensation carrier, on plaintiff's claim of negligent safety inspection of the workplace.

On appeal, Towmotor claims that the trial court erred by not instructing the jury on proximate cause and comparative fault, and by its calculation of prejudgment interest. Plaintiff also appealed, claiming he is entitled to a new trial against Liberty Mutual because the trial court abused its discretion in admit-

ting into evidence the workers' compensation policy and the fact that Liberty Mutual paid him workers' compensation benefits, and in limiting plaintiff's cross-examination of a company witness. We affirm both judgments.

## I. Towmotor's Appeal

### A. Proximate Cause

Towmotor's first claim of error is that the trial court failed to instruct the jury on the element of proximate cause in the strict-products-liability claim. Proximate cause, or proof that a product's defect legally caused the injury, is a prerequisite for recovery in a claim of strict liability in tort. American Law of Products Liability 3d § 4:3 (1987); see also *Zaleskie v. Joyce*, 133 Vt. 150, 155, 333 A.2d 110, 113–14 (1975) (doctrine of strict products liability, as set forth in Restatement (Second) of Torts § 402A (1965), adopted as law). Failure to instruct the jury on an element relevant to the decision may be reversible error if the error is prejudicial. See *Mobbs v. Central Vt. Ry.*, 155 Vt. 210, 218, 583 A.2d 566, 571 (1990) (trial court is required to instruct jury fully and correctly on all points relevant to the decision, but degree of elaboration is within court's discretion); see also *Silva v. Stevens*, 156 Vt. 94, 107–08, 589 A.2d 852, 860 (1991) (party appealing a jury charge must establish both that it was erroneous and that prejudice resulted).

The issue of causation was presented to the jury for deliberation on the strict liability claim against Towmotor. The court instructed that "[o]ne who sells any product in a defective condition unreasonably dangerous to its user or consumer is subject to liability for physical harm thereby *caused* to the ultimate user . . . ." (Emphasis added.) Although the court did not specifically define "proximate cause," both plaintiff and Towmotor presented conflicting theories of direct causation. The jury answered "yes" when asked in writing if the defective condition of the forklift was "a cause" of the accident. Furthermore, while "proximate cause" was expressly defined only as it applied to the claim against Liberty Mutual, the court apprised the jury that the concept of intervening cause was applicable in both the claim against Towmotor and that against Liberty Mutual. These instructions were stated in part as follows:

> As far as proximate cause is concerned, . . . [t]he key here is whether the Defendant's negligence led to the accident or the injury in a natural and uninterrupted sequence of events, whether or not the Defendant's negligence was a substantial factor in bringing about the injuries, whether the accident or the injuries would not have happened if the Defendant had not been negligent.
>
> We have a legal definition in a legal dictionary that defines proximate cause as that which [occurs] in a natural and continuous sequence unbroken by any efficient intervening cause . . . .

██ The term "proximate cause" has been considered misleading in that it is not necessarily predicated on nearness in time or distance. *Perkins v. Vermont Hydro-Electric Corp.*, 106 Vt. 367, 381, 177 A. 631, 637 (1934) ("efficient and producing cause" more accurate terminology as proximate cause often describes a cause without which the injury would not have occurred); see also *Tufts v. Wyand*, 148 Vt. 528, 530, 536 A.2d 541, 542 (1987) (finding of proximate cause depends on showing that negligent act was cause in fact of injury).

█ Both plaintiff and Towmotor offered expert testimony to support their theories of causation. Plaintiff's expert argued that the forklift was defective because of excessive "drift" or movement in the mast of the lift when overloaded, thereby causing the accident. He submitted that the forklift was unreasonably dangerous, and that Towmotor had not provided adequate warnings of the possible consequences of overload. Towmotor, on the other hand, submitted testimony that the alleged movement was so small that, even if overloaded, the movement could not have caused the forklift to tip over. Towmotor contended that the tip-over must have been caused by an external force, such as the operator dismounting the lift while a load was suspended, improper placement of the vat on the lift, or external contact with the overloaded lift's front end. Towmotor argued that any one of these factors, coupled with the failure of plaintiff's employer to train and supervise operators properly, caused the accident. The verdict reflected that the jury found the theories of plaintiff's expert credible. Incantation of proximate cause definitions would not have significantly helped the jury resolve the conflicting theories of causation in this case.

## B. Comparative Negligence

Towmotor next asserts that the trial court's refusal to instruct the jury on comparative negligence as applied in strict-products-liability actions amounts to reversible error. Comparative negligence requires the negligence of the plaintiff to be compared to the negligence of the defendant, and recovery is reduced according to the proportional amount of plaintiff's negligence. 12 V.S.A. § 1036. This may be problematic in strict liability cases, as strict liability imposes liability based on causation, but without fault or negligence in the traditional sense. See 2 M. Madden, Products Liability § 13.13 (2d ed. 1988). Instead, the trial court instructed the jury on the defense of assumption of risk as a complete bar to plaintiff's recovery.

Whether or not the trial court erred by failing to charge on comparative negligence, the error, if any, was harmless. In response to a specific written question, "Was the plaintiff Gary Gilman negligent?" the jury answered, "No." There being no negligence on the part of plaintiff, there can be no fault to compare.

## C. Interest Calculation

Last, Towmotor contends that the court erred in its instructions on damages and its calculation of prejudgment interest. In response to an interrogatory, the jury found that of $279,166 in total compensation for damages, $199,000 represented the amount of "medical expenses, lost wages/income, pain, suffering, impairments and other losses" from the date of the accident until the date of verdict. The court added to the $199,000 figure 12% per annum interest from the date of the accident until the verdict. Towmotor argues that the jury's failure to break down past damages according to type and date incurred gave plaintiff "windfall" interest.

Prejudgment interest in this case was proper to make plaintiff whole, but must be calculated on liquidated or reasonably ascertainable damages only. Towmotor is correct that interest is not to be added to "soft" damages such as pain and suffering. *Turcotte v. Estate of LaRose*, 153 Vt. 196, 200 n.2, 569 A.2d 1086, 1088 n.2 (1989). No objection, however, was made to the instruction or interrogatories on the point now raised by

Towmotor, and it was understood at trial that interest would be calculated on the past damages found by the jury. Towmotor's point is therefore waived. V.R.C.P. 51(b); see *Hartnett v. Union Mut. Fire Ins. Co.*, 153 Vt. 152, 160, 569 A.2d 486, 490 (1989) (failure to object to portion of instruction on damages precludes review on appeal).

## II. Plaintiff's Appeal

### A. Workers' Compensation Policies

Plaintiff submits that the court erred by admitting into evidence the workers' compensation policy that reserved to Liberty Mutual the right to inspect plaintiff's work site. Trial courts have great latitude in decisions to admit or exclude evidence, and such decisions will not be reversed absent an abuse of discretion resulting in prejudice. See *Silva*, 156 Vt. at 111, 589 A.2d at 862 (decision to admit evidence will be reversed only if probative value is significantly outweighed by danger of unfair prejudice). The insurance policy admitted over plaintiff's objection states:

A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public.

We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. . . .

Plaintiff contended that his employer relied on Liberty Mutual to make safety inspections. The policy, as the written express agreement between the employer and Liberty Mutual, is relevant to the reasonableness of that reliance. Liberty Mutual did not contend that the policy itself defined its duty, or lack thereof, but that it was one factor in establishing the extent and nature of Liberty Mutual's "undertaking." See, e.g., *Derosia v. Liberty Mutual Ins. Co.*, 155 Vt. 178, 186, 583 A.2d 881, 885 (1990) (workers' compensation carrier found liable for negli-

gent inspections despite an express liability disclaimer in the policy).

The court instructed the jury that

[t]here was a contract of insurance between the parties in effect at the time of the accident. . . . [T]hat is something that you look at and that you consider, not exclusively, and it's not the sole determination of the question. . . . I must point out to you that [the policy] together with other items in evidence is something for you to consider in determining whether or not a duty existed, whether or not the plaintiff has proven by a preponderance of the evidence the existence of a duty.

This appropriately informed the jury of the weight to be given the policy and diminished the chance of prejudice in admitting the liability disclaimer.

Plaintiff also argues that the court should have allowed a prior workers' compensation policy to be admitted into evidence to show an inspection procedure employed during the time when the alleged negligent actions took place. The trial court did not abuse its discretion by excluding the older policy. The newer policy was similar in language to the old, and simply added the explicit disclaimer — "[o]ur inspections are not safety inspections." Given that the newer policy contained no substantial changes, there is no error.

Plaintiff next asserts that the trial court improperly restricted his right to cross-examine a Liberty Mutual employee about the language in the Liberty Mutual policy. The extent to which a party may cross-examine a witness is within the sound discretion of the court. V.R.E. 611(b); *Contractor's Crane Serv., Inc. v. Vermont Whey Abatement Authority*, 147 Vt. 441, 450, 519 A.2d 1166, 1173 (1986). The court sustained defendant's objection to plaintiff's inquiry as to whether the witness had discussed policy provisions with other Liberty Mutual employees. The question asked for an irrelevant fact, and plaintiff was not precluded from questioning the witness about the policy and obligations of the company. There was no error.

### B. Payment of Workers' Compensation

Finally, plaintiff asserts that he was prejudiced by the trial court's admission of evidence that he had received workers'

compensation benefits. The error was compounded, he claims, by the court's refusal to advise the jury of the amount of the payments or of Liberty Mutual's lien or setoff rights. Plaintiff argues that the rule set forth in *Slayton v. Ford Motor Co.*, 140 Vt. 27, 29, 435 A.2d 946, 947 (1981), stating that the fact and amount of a liquidated settlement between plaintiff and one of several defendants should not to be disclosed to the jury, is controlling. However, this rule has, following the adoption of V.R.E. 408, been modified to allow the trial court to admit evidence of settlement where it would be unfair and prejudicial to exclude such evidence. *Sampson v. Karpinski*, 147 Vt. 315, 320, 515 A.2d 1066, 1070 (1986) (where strict adherence to *Slayton* rule results in unfair result, "admission of sufficient evidence to alleviate that prejudice is within the sound discretion of the trial judge").

██ ██ The trial court concluded that because plaintiff's theory of liability against Liberty Mutual was not based on the insurance carrier's obligation to pay the plaintiff for injuries suffered on the job, and that this obligation had been met, the fact of payment could be disclosed to the jury. The jury undoubtedly knew Liberty Mutual was the workers' compensation carrier for plaintiff's employer. Its presence in the lawsuit was predicated upon that relationship. Payment of benefits, therefore, could be readily inferred. "[T]he trial court is in the best position . . . to determine whether, on the circumstances before it, prejudice is more likely to occur by informing the jury of the fact of settlement or by excluding it from its consideration." *Id.* at 321, 515 A.2d at 1070. If the jury may infer payment of workers' compensation or it is admitted as fact, the jury should be instructed to disregard payment in its damages determination. *Id.* Here, the court instructed the jury:

> Your duty . . . is to completely disregard the workman's compensation aspects of this case. What benefits were received, what they amounted to, who paid them, what their rights are as a result of having paid those benefits, all of that material is to stay out of your deliberations and out of your concerns and considerations.

Such instruction was all that was required. Consequently, there is no error.

*Affirmed.*