**Sandra S. Quirion, Administratrix of the Estate of Peter R. Quirion v. R. Jackson Forcier, M.D. and Hitchcock Clinic**

[632 A.2d 365]

No. 91-354

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 24, 1993

*Gregory P. Howe*, Newport, for Plaintiff-Appellant.

*David L. Cleary* and *Kaveh S. Shahi* of *David L. Cleary Associates*, Rutland, for Defendants-Appellees.

**Dooley, J.** This is a medical malpractice action by Sandra Quirion, spouse of decedent Peter Quirion and administratrix of his estate, against Dr. R. Jackson Forcier and the Hitchcock Clinic, a part of Dartmouth Hitchcock Medical Center. After trial in the Orleans Superior Court, the jury brought in a defendants' verdict. On appeal, plaintiff claims that the trial court erred in allowing in evidence that (1) plaintiff settled with three

other doctors prior to trial; (2) these other doctors were negligent in their treatment of decedent; and (3) decedent regularly used marijuana. We affirm.

Decedent complained of chest pains from 1978 until his death in 1985, at thirty-three. During the period between 1982 and October 3, 1985, he was treated for this condition by Dr. James Holcomb, his primary physician; Dr. Richard Beloin, partner of Dr. Holcomb; and Dr. Alan Feltmarch, an emergency room physician at North Country Hospital. Each of these doctors practices in the area of decedent's residence in Newport, Vermont.

Decedent became dissatisfied with the lack of relief from the Newport-area doctors and, on the advice of a neighbor, consulted defendant Forcier in his office in Hanover, New Hampshire. Following a one-hour examination on October 3, 1985, defendant sent letters to decedent and Dr. Holcomb outlining his conclusions. The letter to Dr. Holcomb outlined the medical history, as conveyed by decedent, and the examination findings, and concluded, "I do not believe that Mr. Quirion's chest pain is related to coronary artery disease." The letter suggested that the pain might be related to "reflux esophagitis" and recommended certain tests. It also suggested that the symptoms might be brought on by anxiety. There was no follow-up to this letter by Dr. Holcomb. A little over a month later, decedent died of a heart attack, and an autopsy showed blockage of the coronary arteries.

Plaintiff sued the three Newport-area doctors, as well as defendants, and retained Dr. Alan Markowitz of Cleveland, Ohio as her expert witness. Dr. Markowitz was deposed by counsel for each of the defendants in 1990. Thereafter, plaintiff settled with the Newport-area doctors, leaving only defendants Forcier and the Hitchcock Clinic in the case. Because Dr. Markowitz would not be available for trial, plaintiff conducted a second deposition of him by video, with cross-examination by counsel for defendants. This video deposition, with certain parts excised, became Dr. Markowitz's testimony at trial. Similarly, an expert witness for defendants, Dr. Thomas Ryan, testified at a videotaped deposition, and this deposition became his testimony at trial.

After two days of testimony, the jury found that defendants had not been negligent in their treatment of decedent. Plain-

tiff's appeal relates to certain evidentiary issues that were raised before trial by motions in limine and during trial by appropriate objections. The issues involve the admissibility of the evidence of the settlement with the Newport-area doctors, evidence of their negligence, and evidence of decedent's marijuana usage. We take them in this order.

During the video deposition of Dr. Markowitz, defendants' counsel asked questions related to plaintiff's settlement with the Newport-area doctors, attempting to show that Dr. Markowitz changed his testimony between the two depositions. According to defendants, in the first deposition Dr. Markowitz testified that the negligence of Doctors Holcomb, Beloin and Feltmarch was primarily responsible for decedent's death and that Dr. Forcier was largely blameless. In defendants' view, Dr. Markowitz changed his analysis with respect to Dr. Forcier after learning of the settlement and targeted him with responsibility. Defendants argue that the evidence of the settlements was necessary to show the reason for Dr. Markowitz's change of testimony.

Plaintiff moved in limine to exclude "any references to culpability on the part of former defendants Holcomb, Beloin and Feltmarch" as irrelevant to Dr. Forcier's negligence and specifically to exclude from the Markowitz testimony references to plaintiff's settlement with these doctors. The trial court denied these motions, and admitted the evidence at trial. As to the involvement of the other doctors, the court ruled that this would inevitably be part of the background and would go to the ability to diagnose decedent's condition from the symptoms. The court ruled that the fact of the settlement could be used in cross-examining Dr. Markowitz and was related to his credibility. It left to trial any further reasons to develop the settlement information. At trial, the court stated in its instructions to the jury that the fact of the settlements could be considered only as bearing on Dr. Markowitz's credibility and not on defendants' negligence. The court also stated that the jury was not to consider whether the former defendants were negligent or how that negligence would compare with that of Dr. Forcier.

On the first point, plaintiff relies primarily on *Slayton v. Ford Motor Co.*, 140 Vt. 27, 29, 435 A.2d 946, 947 (1981), in which we held "that where there has been a liquidated settlement be-

tween one of several defendants and a plaintiff . . . the jury not be informed of such fact, or the sum paid, and that it be the function of the court . . . to find the amount by which such verdict should be reduced." We explained the rationale:

> If the jury is informed of either the fact or the amount of a settlement, there is a danger that it will draw improper inferences. A jury might conclude that the settling defendant was the party primarily responsible for the injury, and that the remaining defendants should therefore be exonerated. . . . It might take the amount of the settlement as a measure of the plaintiff's damages. . . . It might consider one defendant's settlement to be an admission of negligence, and then impute this negligence to a nonsettling defendant. . . .

*Id.* at 29–30, 435 A.2d at 947 (citations omitted). In this case, the jury was informed of the settlements but not their amounts. Nevertheless, plaintiff alleges that one of the concerns in *Slayton*, that the jury would shift responsibility away from defendants to the doctors who settled, is exactly what occurred here.

■ Following the adoption of the Vermont Rules of Evidence, the holding of *Slayton* was explained in *Sampson v. Karpinski*, 147 Vt. 315, 515 A.2d 1066 (1986). There we held that the admissibility holding of *Slayton* is now controlled by Rule 408 of the Vermont Rules of Evidence, and further that the *Slayton* rule "is not absolute or unyielding." *Id.* at 320, 515 A.2d at 1070; see also *Gilman v. Towmotor Corp.*, 160 Vt. 116, 124, 621 A.2d 1260, 1264 (1992) (*Slayton* rule modified following adoption of Rule 408 "to allow the trial court to admit evidence of settlement where it would be unfair and prejudicial to exclude such evidence"). When failure to disclose the settlement to the jury has unfair and prejudicial results, "admission of sufficient evidence to alleviate that prejudice is within the sound discretion of the trial judge." *Id.* Rule 408 prohibits the admission of settlement information "to prove liability for, the invalidity of, or

the amount of the claim or any other claim"[1] but allows the evidence to be admitted for another purpose, "such as proving bias or prejudice of a witness." V.R.E. 408. In addition to the considerations discussed in *Slayton*, the trial judge may also consider the underlying policy of Rule 408 favoring voluntary settlements of disputes. See *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985) (decided under similar Federal Rule of Evidence 408).

■ Defendants introduced the evidence of the settlements through plaintiff's expert in order to impeach his opinion because, they argued, he changed his testimony from virtually exonerating defendants, and blaming the Newport-area doctors, to blaming defendants. They offered the settlements as the motive for the changes of opinion. Thus, the settlement was used to show bias or prejudice of the expert witness, exactly one of the uses contemplated by Rule 408.

Other courts have recognized the admissibility of settlement evidence to attack credibility in similar circumstances. In a similar case, the Wisconsin Supreme Court authorized a medical malpractice defendant to show that the plaintiff had settled with other doctors in order to impeach the plaintiff's liability testimony:

> It is argued by defendants that the evidence of a prior settlement between Dr. Bowden and [plaintiffs] was admissible to show prejudice on the part of [plaintiff] as a witness because she had a financial interest in playing down the negligence of Dr. Bowden and emphasizing that of [defendants]. We agree, and we conclude that evidence of a settlement can be used, as in this case, to show possible bias of a witness, although it cannot be used to prove liability or invalidity of a claim at issue.

*Hareng v. Blanke*, 279 N.W.2d 437, 441–42 (Wis. 1979).

---

[1] The reference to the "claim" in the rule is to the claim for which there has been a settlement or offers or negotiation. In this case, it is the claim between plaintiff and the Newport-area doctors. The rule is broad enough to preclude information related to the settlement of that claim from being introduced to show the validity or invalidity of "any other claim." Therefore, if a claim against one party is settled, the "fact of settlement is not admissible as to remaining claims." Reporter's Notes, V.R.E. 408.

Plaintiff argues that the exclusion from the prohibition of Rule 408 does not apply because the expert never changed his testimony so that there was no legitimate credibility issue. We are unable to evaluate fully this argument from the record before us. After defendants cross-examined Dr. Markowitz with excerpts from his earlier deposition, plaintiff failed to show the parts that were consistent with his testimony, and the earlier deposition is not in the record. Certainly, the parts of the deposition highlighted by defendants suggest a change of testimony. From what we have before us, defendants have a tenable claim that Dr. Markowitz changed his testimony from his earlier deposition when all doctors were still defendants to his testimony given after the plaintiff settled with the three Newport-area doctors.

We recognize that the fact that defendants had a legitimate reason for offering the settlement evidence does not end the inquiry. Because there is a substantial risk that the jury will use the evidence for an impermissible purpose, the evidence must pass the balancing test of Rule 403, weighing probative value against the "danger of unfair prejudice, confusion of the issues, or misleading the jury." V.R.E. 403; see also 23 C. Wright & K. Graham, Federal Practice & Procedure § 5311, at 264 (1980) (exclusion of settlement evidence may be called for under Rule 403 unless evidence is quite probative on issue of bias). In many of the reported opinions in which settlement evidence was excluded, the decision was grounded on Rule 403 considerations. See *Myers v. Pennzoil Co.*, 889 F.2d 1457, 1461 (5th Cir. 1989); *Dongo v. Banks*, 448 A.2d 885, 891 (Me. 1982).

The trial court has broad discretion in ruling on 403 questions, and review here is only for abuse of discretion. See *State v. Percy*, 158 Vt. 410, 415, 612 A.2d 1119, 1123 (1992). The burden of showing abuse is a heavy one. See *State v. McElreavy*, 157 Vt. 18, 23, 595 A.2d 1332, 1335 (1991). For a number of reasons, we do not believe that plaintiff has shown an abuse of discretion here.

First, the risk of improper usage of the evidence by the jury is reduced somewhat by the requirement of *Sampson* that "the court must clearly instruct the jury to disregard the settlement when determining liability and damages," 147 Vt. at 321, 515 A.2d at 1070, and the requirement of *Slayton* that the jury not

be told the settlement amount. 140 Vt. at 29, 435 A.2d at 947. The jury was not told of the settlement amount in this case, and there was a clear instruction, agreed to by plaintiff. Consistent with the instruction, defendants' counsel stated in closing argument that the settlement was relevant to the credibility of Dr. Markowitz.

Second, the court gave thorough and thoughtful consideration to the merits of the issue in response to the motion in limine. The issues were revisited and reconsidered by the different judge who presided at trial. Thus, it is clear that the two judges carefully exercised the discretion accorded them.

Third, the evidence had substantial probative value in the context of this case. Cf. *State v. Bruyette*, 158 Vt. 21, 30–31, 604 A.2d 1270, 1274 (1992) (probative value of evidence of defendant's past sexual activity to prove central issue of identity in rape prosecution outweighed prejudicial value). The trial was relatively short. Plaintiff's case on liability was built almost entirely on the testimony of Dr. Markowitz. Defendants had to attack the weight of the doctor's testimony in the minds of the jury, and the changes in testimony, combined with the motive shown by the settlement, were probative to do so.

■ Finally, it would be apparent to the jury that if plaintiff had a claim against defendants, she also had claims against the Newport-area doctors, whose involvement with decedent was much more extensive and who failed to diagnose his heart condition. The court could conclude in these circumstances that the risk of prejudice to both parties would be reduced by making the jury aware of the settlement rather than having it speculate on what happened to the other claims.

Plaintiff's second argument is similar to the first. Here, plaintiff faults the trial court for allowing defendants to offer evidence of the negligence of the Newport-area doctors. In plaintiff's view, defendants were allowed to change the focus to the negligence of these doctors in the hope that the jury would overlook defendants' negligence.

■ Plaintiff's allegations of misuse are overstated. Defendants raised the negligence of the other doctors solely in the cross-examination of Dr. Markowitz, primarily to impeach him by showing the change in his testimony between the deposi-

tions.[2] They did not claim that the negligence of the other doctors in any way exonerated them. In fact, none of the direct evidence pointed in this direction. In closing, defense counsel stated that the jury should focus on the responsibility of others only in determining the credibility of Dr. Markowitz. The court charged that the jury was not to consider the negligence of the other doctors in determining the negligence of defendants.

The actions of the Newport-area doctors were inextricably intertwined in this case. See *Sheldon v. Wright*, 80 Vt. 298, 304, 67 A. 807, 809 (1907) (history of condition from date of medical problem to date of trial, along with the treatment received and the results of that treatment, are admissible "to throw light both upon the question of liability and upon the question of damages"). They explained why decedent went to Dr. Forcier, the medical history decedent presented and why Dr. Forcier's main work product was a letter to Dr. Holcomb. As we explained above, the jury was aware that the Newport-area doctors had failed to diagnose decedent's condition in a course of treatment of his chests pains that stretched over years.

As with the settlement information, the real question is whether the court abused its discretion in allowing the impeachment evidence. Considering the context in which the evidence was offered, the court's careful consideration of the issues in ruling on the motion in limine and at trial, the limited purpose of the evidence and the charge to the jury, we find no abuse of discretion.

Plaintiff's third argument faults the trial court for allowing defendants to show that decedent was a regular user of mari-

----

[2] Defendants did argue that the failure of Doctor Holcomb to act on the letter from Doctor Forcier was negligence and constituted an intervening cause that broke any chain of causation between defendants' actions and decedent's death. On this theory, defendants' negligence, if any, would not be a proximate cause of death. Although there was some limited factual development of this theory, the court decided, after the evidence was concluded, not to charge the jury on this theory. In any event, the jury found defendants were not negligent and never reached the question of proximate cause. In view of the limited development of the theory and the action of the court and jury, it is fair to say that the negligence of the Newport-area doctors was raised only to impeach Dr. Markowitz.

juana.[3] The evidence of decedent's use was that it was found in his blood during the autopsy, and plaintiff testified he was a regular user. Although defendants have not been entirely consistent on the relevance of this information, two related theories emerge from the various arguments over the evidence. Both relate to the fact that decedent failed to disclose the marijuana use in stating his medical history to Dr. Forcier.

The first theory is based on the testimony of plaintiff's expert that marijuana smoking is linked to heart disease just as cigarette smoking is linked to heart disease. In fact, plaintiff's expert testified that marijuana smoking is a greater cause of heart disease than cigarette smoking. Defendants argue that decedent's failure to disclose the marijuana usage was a factor in Dr. Forcier's failure to diagnose heart disease and was contributory negligence. Dr. Forcier was not asked, however, whether his opinion would have been different for this reason.

The second theory is based on the fact that marijuana usage can make a person appear anxious. As a result, according to Dr. Forcier's testimony, decedent's failure to disclose his marijuana usage threw Dr. Forcier off and led him to believe that decedent's symptoms might be psychosomatic, at least in part, as he stated in the letter to Dr. Holcomb. Again, defendants argue that the failure to disclose the usage directed Dr. Forcier away from the correct diagnosis and was contributory negligence.

Our rules provide a broad definition of relevance. See V.R.E. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The evidence of decedent's marijuana usage is relevant under this standard.

Plaintiff's claim is that the jury is less likely to be responsive to her case if they know decedent is an illegal drug user. Normally, the issue of "crimes, wrongs or acts" arises when there is a risk that the jury will infer from a past bad act of a party the propensity to do it again, and the repetition of the act is related

---

[3] Plaintiff also moved in limine to exclude evidence that decedent used hard drugs while in the service in Viet Nam. The motion was initially denied but was granted by a different judge at trial and resulted in editing of the video depositions.

to the conduct in issue before the court. Such propensity evidence is inadmissible "to prove the character of a person in order to show that he acted in conformity therewith" but may be admissible for other purposes. V.R.E. 404(b). There is no propensity concern here. No relevant character trait was in issue in the medical malpractice proceeding.

Thus, the issue, like the others in this case, turns on whether the probative value of the drug-usage evidence is substantially outweighed "by the danger of unfair prejudice," V.R.E. 403, and review here is for abuse of the broad discretion of the trial court. Again, we do not believe the discretion was abused.

The failure of decedent to provide an adequate and accurate medical history to Dr. Forcier was a central point of the defense. The marijuana usage, decedent's failure to disclose it and its importance to a proper diagnosis had substantial probative value in support of the defense. Defendants did not overemphasize the marijuana usage; the evidence about it was relatively brief, and it was not mentioned in closing argument.

On the other hand, decedent's credibility was not in issue, and there is a lesser risk that the jury would translate their reaction to decedent's illegal drug use to plaintiff. Plaintiff was allowed to explain that decedent used marijuana because it gave him relief from the pain. As with the other issues raised by the motion in limine, the court carefully considered plaintiff's claim of prejudice and balanced it against probative value. Other courts have upheld the admission of drug use evidence in analogous circumstances as within the discretion of the trial court. See *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200–01 (8th Cir. 1990) (allowing brief questioning of plaintiff concerning marijuana and cocaine use to explore plaintiff's voluntary exposure to risk of harm in negligence action); *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467, 1475–76 (11th Cir. 1984) (in malpractice action, evidence of drug and alcohol use relevant to plaintiff's ability to communicate with doctor for treatment and respond to rehabilitative therapy). We concur.

*Affirmed.*