Argued October 13, affirmed November 22, 1961

# LEE *v.* CALDWELL
### 366 P. 2d 913

*Charles S. Crookham,* Portland, argued the cause for appellant. With him on the brief were Vergeer & Samuels, Portland.

*Glen R. Jack,* Oregon City, argued the cause for respondent. On the brief were Jack, Goodwin & Santos, Oregon City.

Before WARNER, J., presiding, and SLOAN, O'CONNELL, LUSK and BRAND, Justices.

BRAND, J.

This is an action for damages on account of a collision between two cars at the intersection of Highway 212 and the Bradley and Richey Road near Boring, Oregon. The complaint alleges that plaintiff was driving on the intersecting highway and approaching Highway 212

> "and at said intersection stopped her motor vehicle, and at said time and place the defendant was operating a motor vehicle in the same direction as the vehicle driven by plaintiff, and while plaintiff was stopped crashed into the rear of plaintiff's vehicle causing the injuries hereinafter alleged."

The allegations of negligence are absence of lookout and of control, excessive speed, want of adequate brakes, and failure "to operate her automobile in such a manner she could stop to avoid striking other vehicles lawfully using the highway, particularly the plaintiff's."

The defendant admits that the plaintiff was driving on an intersecting highway and approaching Highway 212 and that plaintiff stopped her vehicle at the intersection

> "and that the defendant was operating a motor vehicle in the same direction as the plaintiff, and behind the vehicle driven by the plaintiff, and admits that the front portion of the car driven by the defendant collided with the rear portion of the car operated by the plaintiff, * * *."

Except as admitted, defendant denies the other allegations of the complaint. As a separate defense, defendant alleges

"That at the time of the collision described herein, plaintiff stopped her vehicle at the described stop sign, and started forward, and then suddenly again stopped her said car, and at said time, and immediately prior thereto, the plaintiff was careless, reckless and negligent in the operation of the vehicle she was driving in the following particulars:

"(A) In bringing her motor vehicle to a sudden stop upon the main traveled portion of the highway when the operation of another vehicle would be affected thereby.

"(B) In bringing her vehicle to a stop upon the main traveled portion of the highway without first making any signal indicating her intention to do so.

"(C) In failing to have or to keep a proper or any lookout for other vehicles then upon and using the said highway."

The reply was a general denial. Verdict and judgment went for the defendant. Plaintiff then moved for a new trial upon the following grounds:

"II.

"Insufficiency of the evidence to justify the verdict.

"III.

"Error at law occurring at the trial in that the Court should not have submitted the claim of contributory negligence nor submitted the instruction regarding the giving of a signal when stopping, on the grounds and for the reason that the accident occurred at a stop sign and there was no duty on the part of the plaintiff to give any signal upon stopping."

Other grounds were also asserted but we find it unnecessary to consider them at this point.

Plaintiff filed a memorandum of authorities in support thereof, and stated, as follows:

"* * * The sole contention herein is that the instruction given by the Court, as to the duty of the plaintiff to signal before stopping, was erroneous and highly prejudicial for the reason that plaintiff was not contributorily negligent as a matter of law."

Plaintiff contended that there was no duty to signal when she stopped as required by law in response to a stop sign. She contends further that it was error to submit to the jury the issue of contributory negligence and that the plaintiff "as a matter of law should have been found free of any statutory negligence on her part." It is undisputed that there was a stop sign and that the plaintiff did stop as required. The issue concerning contributory negligence is whether plaintiff, after having stopped, started up again and then stopped without any signal.

The trial court first denied plaintiff's motion for a new trial. Counsel for plaintiff then filed an additional memorandum in which he argued that there was no duty to give a signal of her intention to stop at a stop sign. On this we may agree. Plaintiff continued:

"* * * As you clearly stated in your letter, she then proceeded for some feet and then stopped again. The uncontradicted testimony of the plaintiff was to the effect that she stopped because of mechanical failure of her automobile. It is my understanding that this is an emergency stop which is created for the reason that she cannot proceed into the lane of traffic when her car is incapacitated and she had no alternative but to stop as soon as possible."

The trial court then reversed its original ruling and granted a new trial. The defendant appeals.

It will be noted first that the plaintiff has changed her position on the facts. Reference to the portion of the complaint quoted supra clearly states that plaintiff was struck at the time when, and place where, she stopped at the stop sign. The second memorandum of plaintiff admits that plaintiff, after stopping, then "proceeded for some feet and then stopped again" when she was hit. Plaintiff then relies on an emergency doctrine dispensing with the duty to signal.

Concerning the collision, the plaintiff testified:

"A  I started, was going to go on, and killed the motor. The car would probably have an optical illusion of going on. Since the accident I have watched cars like this because - - -

"THE COURT: You just tell what happened.

"Q  (By Mr. Jack)  Just tell what you did.

"A  Well, anyway, the car, killed my motor, I set my brakes, started the car, was looking back to my left and was in the process of shifting into low gear when Mrs. Brown hit me."

On cross-examination defense counsel asked:

"Q  *  *  *  you killed the motor, then you started the motor, then you press in on the clutch, put it into low gear?

"A  No, it wasn't in low gear.

"Q  It wasn't in gear?

"A  It was not in gear.

"Q  You hadn't been ready to start then, yet?

"A  I was lifting up on the gearshift to put it into low gear when she hit me."

Plaintiff's daughter was riding on the right side beside her mother. Speaking of the plaintiff, her daughter testified:

"A  *  *  *  She was waiting for the traffic to

clear right and left, and she was just getting ready to put it in gear and that woman hit us from behind.

"* * * * *

"A * * * She was just getting ready to put it in gear. The motor had killed but it didn't move any. I am positive of that. And when she was getting ready to put it in gear that woman hit us from behind."

In opposition to the contention of the plaintiff and her daughter, the defendant testified, as follows:

"Q Now, will you tell us how the accident happened?

"A Well, we came up to the stop sign and we both stopped, and she looked both ways and started her car, and I looked both ways and I started mine, and she stopped in front of me, and I put my brakes on and hit her.

"* * * * *

"Q Did both of your cars, before the impact occurred, come to a complete stop?

"A They did.

"Q While you were stopped, could you see what she was doing while her car was stopped?

"A I didn't pay much attention to it at the time.

"Q What did you do while you were stopped there?

"A Looked both ways and waited until she left."

Defendant testified that after plaintiff started ahead, "Then she stopped in front of me for no apparent reason."

"Q Was there any signal given, any arm or signal of any kind, before she stopped?

"A No.

"Q Do you have any idea as to the distance that you traveled from the time that you came, you started ahead from a standstill, until the impact occurred?

"A Probably about five feet.

"Q Did you have a chance to apply your brake at all before the impact?
"A I did."

Defendant's estimate of five feet as the distance that she traveled from the time she started ahead until the impact makes no reference to the distance between the cars when both were first stopped. According to her estimate, if there was two feet between the cars before she started ahead, then the plaintiff could have advanced only three feet before the collision. There is no evidence as to the distance between the cars while both were stationary. The defendant testified further:

"Q Did you have any idea about the highest speed your car reached in that five feet or so, from the time you started up until the accident happened?

"A I don't know. About ten, ten miles, fifteen; I don't know."

The foregoing constitutes substantially all of the testimony concerning the actual movement of both cars after both had stopped. The plaintiff says there was one stop only and she was hit before she got the car into gear. The defendant says there was a second stop "about five feet" from the point where she started ahead from a standstill to the point of impact. The difference between the two accounts is further minimized by the concession in plaintiff's memorandum to the judge, to-wit, "As you clearly stated in your letter, she then proceeded for some feet and then stopped again."

■ We now turn to the instruction given by the court. For brevity we shall quote some parts and summarize others:

"* * * the defendant by her answer charges

the plaintiff with negligence in bringing her motor vehicle to a sudden stop upon the main traveled portion of the highway when the operation of another vehicle would be affected thereby; and secondly, in bringing her vehicle to a stop upon the main traveled portion of the highway without first making any signal indicating her intention to so do. By these allegations of negligence the defendant is charging the plaintiff with statutory negligence. In other words, she claims that the plaintiff has violated a statute. * * *"

The court then quoted from ORS 483.126 to the effect that

"the driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety. Whenever the operation of any other vehicle may be affected by such movement he or she shall give a proper signal which is plainly visible to the driver of such other vehicle of the intention to make such movement. * * * The signal required for a stop or suddenly decreasing speed is by extending the hand and arm downward from and beyond the left side of the vehicle. * * * I will therefore * * * instruct you that violation of the statute would be statutory negligence or negligence per se."

The plaintiff took no exception to the giving of the instruction, and if she had appealed from the judgment, she could not have availed herself of error in the instruction, but here the trial court has, on motion, granted a new trial. It is established law that:

"A trial court may, in the exercise of its sound discretion, without exception having been taken to erroneous instruction, grant new trial for instruction resulting in prejudicial error." *Clark v. Fazio,* 191 Or 522, 230 P2d 553, Headnote 2.

And see, *Lyons v. Browning et al,* 170 Or 350, 133 P2d 599.

Our first observation is that the statute requires a signal "of the intention to make such movement." Assuming that stopping is a "movement", here the plaintiff's testimony is, "I started, was going to go on, and killed the motor.  *  *  *  the car, killed my motor." If, contrary to plaintiff's other testimony, this means that she put her car into motion, it also shows that she had no "intention to make such movement," i.e., to stop. There is no contradictory evidence in the record as to the fact that she killed the motor, either when about to start or after starting ahead.

There is no allegation in the answer that the plaintiff was negligent in killing the engine. Why it died is left to speculation. According to the plaintiff's testimony, the fact that the motor died did create an emergency and she was entitled to have an instruction on the emergency doctrine.

■ As argued in the appellant's brief, both parties are entitled to have instructions based on their respective theories of the case, within the issues as framed by the pleadings when supported by evidence. *Garrett v. Bynum*, 215 Or 34, 332 P2d 202, and cases cited. The court did instruct on the emergency doctrine in defining the duties of the defendant, but made no reference to it in connection with the conduct of plaintiff.

■ If, contrary to the numerical weight of the evidence, we assume that plaintiff had put her car into motion before the engine died, the defendant is still confronted with her own evidence. That evidence conclusively shows that in the split second while defendant was moving her car a distance of five feet or less from the point at which it stopped, to the point of impact, at her estimated speed of 10 to 15 miles an hour, the plaintiff would have had no time or oppor-

tunity to give the hand signal for stopping, and there is no substantial evidence that failure under these conditions to get her arm out and down could have enabled the defendant to avoid the collision. The evidence of defendant is to the effect that when plaintiff made the second stop (if she did) the defendant threw on her brakes but nevertheless hit the plaintiff's car. How then could the failure to signal have been a proximate contributing cause of the collision?

The undisputed evidence was that plaintiff neither intended to stop nor gave any signal of intent to stop. Under such circumstances the instruction given by the court to the effect that failure to give the arm signal would be negligence per se amounted in substance to directing a verdict for defendant. The giving of the instruction was, under the circumstances, prejudicial error.

Mention should be made of the fact that several other grounds for a new trial were presented in plaintiff's motion, and no effort has been made by the defendant-appellant to comply with the rule set forth in *Correia v. Bennett and Johnson et ux,* 199 Or 374, 384, 261 P2d 851, as follows:

"* * * an order granting a new trial will not be reversed even if a wrong ground therefore be assigned, if there is any tenable ground for sustaining it in the record, although such ground may not be recited in the order, and it is incumbent on the party seeking to reverse an order for a new trial to show that none of the grounds specified in the motion is well taken." Citing cases.

The order of the circuit court granting a new trial is affirmed.