Argued and submitted January 11, decision of the Court of Appeals affirmed on different grounds; judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings May 27, 1993

## Edith M. HOLGER,
### Personal Representative of the Estate of Ethel I. Loveall, Deceased,
*Respondent on Review,*

*v.*

## C. Edwin IRISH, M.D.,
*Petitioner on Review.*

### (CC A8910-05814; CA A67769; SC S39414)

851 P2d 1122

Janet M. Schroer, of Hoffman, Hart & Wagner, Portland, argued the cause for petitioner on review. Mildred J. Carmack and Karen M. O'Kasey, of Schwabe, Williamson, & Wyatt, Portland, filed the petition.

Dwight L. Schwab, of Schwab, Hilton & Howard, Portland, and David B. Williamson, of Williamson & Williamson, Portland, argued the cause for respondent on review. Mr. Williamson filed a response for respondent on review.

GRABER, J.

Unis, J., concurred and filed an opinion in which Fadeley, J., joined.

Peterson, J., filed an opinion concurring in part and dissenting in part.

## GRABER, J.

This is an action for medical malpractice. Defendant is a surgeon who operated on plaintiff's decedent for colon cancer. During the operation, defendant placed pieces of absorbent gauze, known as laparotomy sponges, in decedent's abdomen; at the end of the surgery, he removed sponges. Two nurses assisting defendant counted the removed sponges and informed him that all the sponges were accounted for. Two years later, a sponge was discovered in decedent's abdomen. It was surgically removed. Nine months later, decedent, who was then 92 years old, died.

Plaintiff, as personal representative of decedent's estate, sued defendant and the hospital employing the nurses who assisted defendant during decedent's surgery. Before trial, plaintiff settled with the hospital. After settling with the hospital, plaintiff amended the complaint to delete all references to the hospital. The second amended complaint alleged only that defendant was negligent. As material here, the amended complaint alleged that defendant "fail[ed] to check and determine that all sponges * * * were removed." The amended complaint did not allege that the nurses were negligent or that they were defendant's agents or employees.

At trial, it was not disputed that the nurses who assisted defendant informed him that all the sponges had been removed from the abdomen of plaintiff's decedent. Plaintiff submitted proposed jury instructions on imputed negligence and *respondeat superior*. The trial court did not give those instructions.

Plaintiff also moved, before trial, to exclude any mention of her settlement with the hospital. The trial court denied that motion and informed the jury of the settlement to explain why the hospital was not a party at trial. The court later instructed the jury not to take the settlement into account in deciding defendant's liability or in calculating plaintiff's damages, if any. The jury returned a verdict in favor of defendant.

Plaintiff appealed, arguing, among other things, that the trial court erred in refusing to give plaintiff's requested jury instructions on imputed negligence and *respondeat superior* and that it erred in informing the jury that the hospital

had settled with plaintiff. The Court of Appeals reversed and remanded the case for a new trial, holding that "[n]o specific pleading of the vicarious liability theory was necessary" and that the trial court erred in refusing to submit that theory to the jury. *Holger v. Irish*, 113 Or App 290, 292, 834 P2d 1028 (1992). The court also held that the trial court erred in informing the jury of plaintiff's settlement with the hospital. *Id.* at 298-99. We affirm on other grounds the decision of the Court of Appeals, reverse the judgment of the circuit court, and remand the case to the circuit court for further proceedings.

■     In considering whether the trial court erred in refusing to give plaintiff's requested jury instructions on imputed negligence and *respondeat superior*, we first consider whether plaintiff was required specifically to plead a theory of recovery based on vicarious liability. Before the adoption of the Oregon Rules of Civil Procedure, this court held that a pleading similar to the one in this case was sufficient to support a claim for relief based on a theory of vicarious liability.

> "The defendant also complains of an instruction given by the court which would authorize the jury to find the defendant responsible for the negligence of the nurse whom he left in charge of the case. It is argued * * * that the complaint does not allege negligence on the part of the nurse * * *. We think * * * that when it is sought to hold a defendant for a wrong committed by his servant, it is sufficient to allege that the defendant committed the act without mentioning the servant." *Olson v. McAtee*, 181 Or 503, 520, 182 P2d 979 (1947).

*See also Kuhns v. Standard Oil Co.*, 257 Or 482, 509, 478 P2d 396 (1971) (where the plaintiff alleged that the defendant operated a truck terminal and was negligent in certain particulars, the plaintiff was allowed to prove direct operation of the terminal and negligence by the defendant or operation of the terminal by an agent and negligence of that agent); *Cascade Warehouse v. Dyer*, 256 Or 377, 379, 471 P2d 775, 474 P2d 325 (1970), quoting *Masters v. Walker*, 89 Or 526, 529, 174 P 1164 (1918) ("It is said to be good pleading to allege that 'an act was done by the defendant, and it is competent to prove that averment by showing that the act was really done by an agent of the defendant thereunto duly

authorized, or that it was afterward ratified by the defendant.' "). *But see Downs v. Nat. Share Corp.*, 152 Or 546, 551-53, 55 P2d 27 (1936) ("It will be observed that an act done through an agent may be averred in any one of three ways: (1) it may be described as the act of a principal without mention of the agency; (2) it may be described as the act of the agent performed on behalf of the principal; or (3) it may be described as the act of the principal performed through the instrumentality of an agent.").

The Oregon Rules of Civil Procedure, including ORCP 18A, were promulgated in 1978 and took effect on January 1, 1980. ORCP 18A provides:

> "A pleading which asserts a claim for relief * * * shall contain:
>
> "A.   A plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition."

Interpreting ORCP 18A, *Davis v. Tyee Industries, Inc.*, 295 Or 467, 479, 668 P2d 1186 (1983), held:

> "[W]hatever the theory of recovery, facts must be alleged which, if proved, will establish the right to recover. It is no longer permissible to veil the facts or theory behind a nonfactual pleading for money had and received and thereafter prove any state of facts which, historically, could support recovery on a theory of money had and received."

The court noted that the comment to ORCP 18A states:

> "The Council [on Court Procedures] decided to retain fact pleading as opposed to notice pleading, i.e., to retain a requirement of fairly specific description of facts as opposed to adopting the less specific fact description allowable in federal courts. * * * The necessity of pleading ultimate facts retains the present Oregon requirements of pleading facts at a fairly specific level." *Id.* at 476 (internal quotation omitted; citation omitted).

This court also has noted "that under the Rules of Civil Procedure 'claim for relief' has replaced 'cause of action.' " *State ex rel Gattman v. Abraham*, 302 Or 301, 310 n 6, 729 P2d 560 (1986). The term "claim for relief" is narrower than the term "cause of action." *Id.* at 310-11. The "Oregon rules require a pleader to state 'the ultimate facts constituting a claim for relief,' ORCP 18 A., rather than pleading a

form of action." *Nearing v. Weaver*, 295 Or 702, 708 n 5, 670 P2d 137 (1983).

In *Moore v. Willis*, 307 Or 254, 767 P2d 62 (1988), this court held, in regard to pleading a defendant's negligence, that the Oregon Rules of Civil Procedure require more specificity than the principles previously in effect. The court stated:

"Before the adoption of the Oregon Rules of Civil Procedure, this court had held that a plaintiff need only plead that the defendant acted negligently. Pleading 'negligence' adequately stated the foreseeability element. *See, e.g., McEvoy v. Helikson*, 277 Or 781, 787, 562 P2d 540 (1977). *But see Reynolds v. Nichols*, 276 Or 597, 600-01, 556 P2d 102 (1976) (holding that a complaint alleging that the defendants were negligent did not adequately allege foreseeability). Recent decisions, however, consistently have required more than mere allegations of 'negligence.' *See Solberg v. Johnson*, [306 Or 484, 490, 760 P2d 867 (1988)]; *Fuhrer v. Gearhart by the Sea, Inc.*, 306 Or 434, 441-42, 760 P2d 874 (1988); *Kimbler v. Stillwell*, 303 Or 23, 28-29, 734 P2d 1344 (1987). *Fuhrer v. Gearhart by the Sea, Inc., supra*, upheld the dismissal of a complaint alleging that a resort owner negligently failed to warn guests of the dangers of the surf adjacent to the resort. The court explained:

" '[T]here is no allegation in the complaint that Gearhart knew or should have known of the dangerous condition of the ocean surf. Without knowledge of a dangerous condition or reason to know of the condition, Gearhart could not have foreseen an unreasonable risk of harm. If plaintiff were able to prove all the facts alleged in the complaint, plaintiff would still not have proved one element necessary to recovery, the foreseeability to defendant of an unreasonable risk of harm to persons in plaintiff's position.' 306 Or at 441.

"*See also* 306 Or at 442-43 (Jones, J., specially concurring).

"We hold that, under the fact pleading requirement of ORCP 18A, an allegation of 'negligence,' without more, does not adequately plead the foreseeability element of the tort." 307 Or at 258-59 (footnote omitted).

In other words, under ORCP 18A, a pleader is required to state *in what way* the defendant allegedly was negligent.

In *Lancaster v. Royal Ins. Co. of America*, 302 Or 62, 726 P2d 371 (1986), the plaintiff was injured in an automobile accident. He sued the other driver (Martin), Martin's employer, and the employer's insurer. The plaintiff settled with Martin and agreed not to execute "personally" on a judgment against him, in return for Martin's assignment of rights, if any, against the employer and the insurer. Martin executed a stipulated judgment in favor of the plaintiff. The plaintiff then sued the insurer for the amount of the stipulated judgment, relying on his rights as Martin's assignee. The plaintiff also argued that he had a right to recover under a statute that prevented an insurer from being relieved of obligations through bankruptcy or insolvency of the insured. This court agreed with the defendant's argument that the plaintiff could not rely on the statute, because he had not pleaded all facts necessary to bring him within its protection:

> "[The statute] plainly indicates that execution of final judgment must be returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or judgment must not be satisfied within 30 days after it is rendered in order for the statutory right to apply. Plaintiff failed to plead either element; therefore, he failed to plead ultimate facts sufficient to constitute a claim for relief under ORCP 18A." 302 Or at 70.

The facts that the claims were related and that they included many of the same elements were not enough to satisfy ORCP 18A.

■ As will be discussed more fully below, for plaintiff to recover from defendant on a theory of vicarious liability here, plaintiff had to prove that the operating room nurses were negligent and that the nurses were defendant's employees or agents or that there were other facts that would establish defendant's supervision and control over the nurses. Those facts need not be proved to establish defendant's direct liability. In the amended complaint, plaintiff alleged only that defendant was negligent because he, personally, failed "to check and determine that all sponges * * * were removed." That fact would support direct, but not vicarious, liability. Therefore, plaintiff did not state the "ultimate facts constituting a claim" of vicarious liability against defendant. That was required by ORCP 18A, as interpreted in *Davis v. Tyee Industries, Inc., supra; Moore v. Willis, supra;* and *Lancaster*

*v. Royal Ins. Co. of America, supra.* The Court of Appeals erred in holding to the contrary.

Plaintiff argues in the alternative that, because defendant introduced evidence of his relationship to the nurses during the operation, ORCP 23B entitled plaintiff to submit the theory of vicarious liability to the jury. ORCP 23B provides in part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

*See also Whinston v. Kaiser Foundation Hospital,* 309 Or 350, 355, 788 P2d 428 (1990) (a pleading is "automatically" amended whenever an issue not raised by the pleading is tried by consent of the parties).

Even assuming that the issue of defendant's vicarious liability for the negligence of the operating room nurses was tried by express or implied consent of the parties, however, the trial court did not err in refusing to give plaintiff's requested instructions[1] because, as the following discussion

---

[1] Plaintiff requested this instruction on imputed negligence:

"Where there are nurses under the control of the surgeon, the negligence, if any, of the nurses is to be considered the negligence of the surgeon-defendant."

Plaintiff requested this instruction on *respondeat superior*:

"Plaintiff claims that the nurses in the surgery were defendant's agents and were acting within the scope of defendant's directions as such agents at the time involved in this case. Defendant denies that the nurses in the surgery were acting within the scope of defendant's direction as agent[s] at the time involved in this case.

"An agent is a person who is authorized to act for and is subject to the controls [*sic*] or right to control of another person, who is called the principal. The acts or omissions of an agent within the scope of the agents [sic] authority are to be considered by you as the acts or omissions of the principal."

At the end of trial, in a meeting with counsel, the court stated:

"I'm not going to give [the requested jury instruction on imputed negligence]. There's no evidence whatsoever in this record of any agency relationship between the defendant, employee relationship to the defendant.

"\* \* \* \* \*

"\* \* \* I cannot find any reference to a claim in your pleadings of either agency or employer or vicarious liability.

"\* \* \* \* \*

"I'll not give [the requested jury instruction on *respondeat superior*] for the reasons stated."

will show, there was no evidence to support the giving of those instructions. It is not error for a trial court to refuse to give an instruction that is not supported by evidence. *See* ORCP 59A (party may submit proposed instructions on questions of law developed by the evidence).[2]

■ Plaintiff contends that defendant was vicariously liable as a matter of law for the negligence of operating room nurses who assisted him during surgery. Thus, plaintiff argues, no evidence of agency was required to support the requested instructions; as "captain of the ship," defendant was responsible as a matter of law for the nurses' negligence. We disagree.

As noted in *Simpson v. Sisters of Charity of Providence*, 284 Or 547, 553, 588 P2d 4 (1978), Oregon has not adopted the "captain of the ship" rule. In that case, the plaintiff brought a claim for negligence against the hospital where he was treated for a spinal injury, alleging that he became paralyzed partly as a result of the failure of the hospital's x-ray technicians to take adequate x-rays of his original injury. The hospital argued that, under the "captain of the ship" rule,

> "[hospital] support personnel are obligated to carry out the orders of doctors, and so long as the order is carried out in a competent manner, hospital personnel are not negligent." *Ibid.* (internal quotation and citations omitted).

This court concluded that the question whether the hospital's x-ray technicians were under the supervision and control of the treating doctors when performing the task of taking x-rays of the plaintiff was a question of fact for the jury. The evidence included testimony that the doctors did not tell the technicians "how many milliamps to deliver" or "whether they should use a grid." *Id.* at 552. "[T]he preponderance of evidence is to the effect that the hospital's employees, the

---

[2] The same principle applied before adoption of the Oregon Rules of Civil Procedure. *See R.J. Frank Realty, Inc. v. Heuvel*, 284 Or 301, 307, 586 P2d 1123 (1978) (instruction need not be given if, although technically correct, it has no relation to the issues raised by the pleadings *and proof*); *Dunford v. Worden*, 242 Or 536, 540, 410 P2d 1020 (1966) (party is "entitled to instructions covering all theories of the case supported by competent evidence"); *Lee v. Caldwell*, 229 Or 174, 182, 366 P2d 913 (1961) (same). *See also Dormaier v. Jesse*, 230 Or 194, 198, 369 P2d 131 (1962) (giving of instructions not supported by evidence permits jury to speculate and is error).

technicians, were not under doctors' orders as to technique in taking and developing x-ray films." *Id.* at 553. This court held that the evidence was "sufficient to allow the jury to find that the x-ray technicians were not under the supervision and control of the treating physicians when performing their duty of taking and developing x-ray films of plaintiff's [spine]." *Ibid.*

Nor does the doctrine of *respondeat superior* necessarily apply in the context of a surgeon's alleged vicarious liability for the negligence of hospital personnel. In *May v. Broun*, 261 Or 28, 492 P2d 776 (1972), the plaintiff sought damages from the defendants, a surgeon and another doctor who assisted him, for burns suffered as the result of an apparent malfunction of operating-room equipment owned and maintained by the hospital and set up for the plaintiff's operation by a circulating nurse. This court wrote:

> "*Respondeat superior* is usually determined by the right of the claimed principal to control the negligent actor. There is no doubt that a surgeon has the right to control the employees of the hospital, including the nurse, in the preparation of the hospital room and of the patient for surgery, as well as in the carrying out of their functions during surgery. However, in a situation where the nurse is in the general employ of the hospital and is performing services for the hospital as well as for the surgeon, courts do not now usually hold that [the nurse] changes from a general employee of the hospital to a special employee of the surgeon until [the nurse] is under the surgeon's direct supervision or control. * * *
>
> "* * * * *
>
> "Changes have also been occurring in the confines of operating rooms. Surgeons are operating more and more in a highly mechanized environment wholly created by hospitals. Much highly technical equipment, now considered necessary, is furnished by the hospital and operated by personnel which [sic] the hospital hires and trains. As a result, in most instances, a surgeon cannot actually have direct supervision or control over such equipment and the persons who operate it even when he is present, if [the surgeon] is going to give the concentration and attention to the surgery which [the] patient has a right to expect.
>
> "* * * * *

"We hold that when technical equipment and the personnel to operate it are furnished by the hospital to the surgeon and injury is caused by malfunctioning equipment or negligent operators, and it is not shown that the surgeon was personally negligent or that the circumstances were such that it was practical for [the surgeon] to exercise direct supervision or control over the machine or its operation, *respondeat superior* liability does not attach to the surgeon. There is no evidence in this case that indicates [that the] defendants had the ability, consistent with their duty to their patient, to supervise or control directly the machine or its operation." 261 Or at 36-40 (citation omitted).

*Piehl v. The Dalles General Hospital*, 280 Or 613, 571 P2d 149 (1977), also is pertinent. In that case, the surgeon left a laparotomy sponge in the plaintiff's abdomen during surgery. The trial of the case resulted in a jury verdict in favor of the plaintiff and against the defendants (the surgeon and the hospital) and in a directed verdict requiring the hospital to indemnify the surgeon for any loss that he might suffer from the judgment. On the hospital's appeal, this court considered the indemnity right between the defendants. The court concluded that, if the surgeon was personally negligent, as distinct from being vicariously liable for the nurses' negligence, then the surgeon was not entitled to indemnity. 280 Or at 615. The court reviewed the facts in detail and concluded that "there was evidence from which the jury could have found the doctor was actively negligent in not discovering and removing" the sponge; therefore, the trial court erred in directing a verdict in favor of the surgeon on the issue of indemnity. *Id.* at 619. The court then considered the hospital's contention that, during the surgery, the nurses were the "loaned servants of the surgeon" for whose negligence the surgeon was vicariously responsible. *Id.* at 620. This court held that the nurses remained servants of the hospital in carrying out the work for which it was being paid by the plaintiff, even if the nurses also were "loaned servants of the surgeon for some purposes." *Ibid.*

In summary, the question whether a surgeon is vicariously liable for negligence of other operating room personnel is a question of fact. Here, there was no evidence that the nurses were defendant's employees or that defendant had supervision or control of the nurses in the performance of their duty of

counting sponges. All evidence in the record was to the contrary: There was testimony that operating room personnel have specialized tasks to perform during surgery, that the operating room nurses present during the operation on plaintiff's decedent had sole responsibility for counting the removed laparotomy sponges, that it was not practical for defendant to exercise control of the nurses in their sponge-counting task, and that, to the contrary, it was defendant's duty to focus his attention on the patient. The nurses were professionals in their own right who were hired and trained by the hospital where the operation took place and for whose services the hospital billed its patient.

Accordingly, we hold that there was no evidence in this case that the operating room nurses were defendant's agents or employees and, thus, no evidentiary support for giving plaintiff's requested jury instructions on vicarious liability. The trial court did not err in refusing to give plaintiff's requested jury instructions on defendant's vicarious liability for the negligence of the nurses.

■ We turn next to the issue whether the trial court erred in informing the jury, at the beginning of trial, that there had been a settlement between plaintiff and the hospital and in instructing the jury in that regard.[3] Before trial, the court determined that, in view of expected testimony regarding the operating room nurses' incorrect count of the laparotomy sponges, the jury would "wonder why the hospital's not involved in the case." For that reason, the court told the jury of the settlement, but not of the amount of the settlement. The trial court instructed the jury that it was "not to infer from the settlement that [defendant] is or is not liable to plaintiff. That settlement does not change the issues between the parties."[4]

---

[3] In so informing the jury, the trial court relied on the decision of the Court of Appeals in *Yardley v. Rucker Brothers Trucking, Inc.*, 42 Or App 239, 600 P2d 485 (1979), *rev den* 288 Or 335 (1980). In that case, the Court of Appeals stated that, "[d]epending upon the circumstances, it might be proper or improper for evidence to be admitted before the jury of the existence of a prior settlement." 42 Or App at 244. The court held, however, that, *"if evidence of a prior settlement is admitted,* * * * the court must unequivocally instruct the jury to disregard the settlement and return a verdict for the full amount of the plaintiff's damages." *Ibid.* (emphasis added).

[4] The trial court based its instruction on Uniform Civil Jury Instruction No. 11.70.

The trial court's actions had two components: the court gave information to the jury, and the court instructed the jury about the law. We first consider the informational component.

This court has not previously considered precisely the question presented, but two cases suggest an answer. In *Roe v. Warren*, 243 Or 373, 413 P2d 610 (1966), a civil assault case, this court held that it was error to admit evidence of the plaintiff's claim against a second attacker. In *Fenton v. Aleshire*, 238 Or 24, 393 P2d 217 (1964), a wrongful death action, this court held that it was error to permit the defendant to tell the jury that the plaintiffs, parents of the deceased child, also had a claim for loss of the child's services. In both of those cases, this court reasoned that it is prejudicial to introduce evidence or argument that the plaintiff might recover for the injuries in question from another tortfeasor or in another case. *Roe v. Warren, supra*, 243 Or at 374-75 (citing *Fenton v. Aleshire, supra*, 238 Or at 28-29). Those decisions suggest that, in the usual case, it is not proper to inform the jury concerning a plaintiff's remedies or potential remedies against persons who are not parties in the dispute that the jury is to decide, unless that information has independent relevance.

Similarly, OEC 408 provides that evidence of a compromise is not admissible unless it is offered for a purpose having independent relevance:

"(1)(a)   Evidence of furnishing * * * or accepting * * * a valuable consideration in compromising * * * a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

"* * * * *

"(2)(b)   Subsection (1) of this section * * * does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, [or] negating a contention of undue delay * * *."

Here, the information concerning settlement with the hospital had no independent relevance, and the circumstances of the case did not suggest a reason to depart from the usual rule. The trial court erred in informing the jury about the settlement at the beginning of trial.

The trial court also instructed the jury about the effect of the settlement with the hospital. Although the instruction was correct in the abstract, in context it compounded the court's earlier error by emphasizing an irrelevant issue.

■ The trial court's instruction did nothing to inform the jury about the issues that it was to decide. This court has held that it can be error to give an instruction that correctly describes the law if "the instruction distracts the jury from the appropriate line of analysis." *Honeywell v. Sterling Furniture Co.*, 310 Or 206, 211, 797 P2d 1019 (1990). In *Honeywell*, this court held that it was reversible error to instruct a jury concerning the distribution that would be made of a punitive damages award, even though the instruction described the applicable statute accurately and even though the jury might have made a "benign" use of the information. *Id.* at 211-12. In this case, the jury could have been encouraged to conclude that plaintiff had been compensated fully for the claimed injury and thereby could have been distracted from the appropriate line of analysis.

■ After examining the entire record of the trial, we are convinced that the errors, considered cumulatively, were prejudicial. The "natural tendency [of the court's statement and instruction] was to plant in the jury's mind the idea that they should allow no damages," *Fenton v. Aleshire, supra*, 238 Or at 28, because plaintiff already was compensated for her loss. Accordingly, we hold that plaintiff is entitled to a new trial.

We have considered plaintiff's other assignments of error but are not persuaded that any of them requires discussion.

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**UNIS, J.,** concurring.

I join the opinion of the court. I write separately only to express reasons, in addition to those expressed by the court, why, in my view, it was reversible error for the trial

court to inform the jury of the existence of plaintiff's settlement with the hospital. The issue of what information or evidence should be presented to the jury and how a jury should be instructed when a plaintiff settles with one or more tortfeasors who are jointly and severally liable[1] and another tortfeasor remains as a defendant in the lawsuit is of obvious interest to the bench, bar, and litigants.

In this case, plaintiff, the personal representative of decedent's estate, sued Good Samaritan Hospital and Medical Center (the hospital) and Dr. Irish (defendant) for negligence. Before trial, plaintiff settled with the hospital. In conjunction with the settlement,[2] plaintiff executed a covenant not to sue or enforce judgment pursuant to ORS 18.455.[3] Plaintiff then amended her complaint to eliminate all references to the hospital. The case was tried on a second amended complaint that made no mention of the hospital in the title or body of the complaint. The second amended complaint did not allege that the nurses who assisted defendant during defendant's operation on plaintiff's decedent for colon cancer were negligent. Plaintiff's second amended complaint named only defendant as a party and alleged only that defendant was negligent.

Before trial, plaintiff moved to exclude any mention of her settlement with the hospital. The trial court denied the motion. Immediately after the jury was empaneled, the trial

---

[1] A joint tort occurs when the behavior of two or more tortfeasors is such that it "is proper to treat the conduct of each as the conduct of the others." 3 Harper, James and Gray, the Law of Torts 1 (2d ed 1986). When a joint tort occurs, the tortfeasors are jointly and severally — or entirely — liable for the harm resulting. *Id.*

[2] For a discussion of three general types of settlement (release, covenant not to sue, and covenant not to execute), see Hamlin, 1 Torts § 15.18 (Oregon CLE 1992).

[3] The legal effect of a covenant not to sue or not to enforce judgment is stated in ORS 18.455(1):

"(1) When a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death or claimed to be liable in tort for the same injury or the same wrongful death:

"(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

"(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

court told the jury about the existence of plaintiff's settlement with the hospital.[4]

In final argument to the jury, defendant's lawyer mentioned plaintiff's settlement with the hospital.[5] After final arguments of the lawyers and before the jury retired, the trial court, in its charge to the jury, again told the jury to not take the existence of plaintiff's settlement with the hospital into account in deciding defendant's liability or in calculating the amount of plaintiff's damages, if any.

Whether it was proper for the trial court to inform the jury about plaintiff's settlement with the hospital for the purpose of satisfying supposed jury curiosity depends, in effect, on whether evidence of the settlement offered for that purpose was admissible at trial.[6]

Admission of compromise or settlement evidence is governed by the provisions of the Oregon Evidence Code. OEC 408, which concerns compromise and offers to compromise, provides in pertinent part:

"(1)(a) Evidence of * * * accepting * * * a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

"* * * * *

---

[4] The trial court told the jury:

"I want to instruct you there has been a settlement between the plaintiff and Good Samaritan Hospital, and Good Samaritan is no longer in this case.

"Now, jurors, what is important is that you are not to infer from the settlement that the defendant Dr. Irish is or is not liable to the plaintiff. The settlement does not change the legal issues between these parties. It has nothing to do with your function. You're simply being informed of that so you understand why Good Samaritan Hospital is not involved in the case at this stage."

[5] In final argument, defendant's lawyer told the jury:

"The judge told you at the start of the trial, and he's going to tell you at the end, that Good Samaritan Hospital has settled. You haven't heard a word from [plaintiff's lawyer]. The judge will tell you they've settled * * *."

[6] In effect, the trial court took judicial notice for adjudicative purposes of the fact of the settlement between plaintiff and the hospital. See OEC 201(a)-(g) (judicial notice of adjudicative facts); Strong, *Judicial Notice*, in Evidence 3-3, § 3.2 (Oregon CLE 1986) (suggesting a possible definition of judicial notice "as the assumption by a court of a fact without requiring traditional evidentiary support of that fact"); id. at 3-4, § 3.3 ("[j]udicial notice of an adjudicative fact is a substitute for proving a fact that is provable by ordinary evidentiary means").

"(2)(b)   [The rule stated in] [s]ubsection (1) of this section also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness [or] negating a contention of undue delay * * *."

The policy underlying the rule of exclusion in OEC 408 is to encourage non-litigious resolution of disputes.[7] *See* Legislative Commentary to OEC 408, *reprinted in* Kirkpatrick, Oregon Evidence 190 (2d ed 1989).

OEC 408, a general rule of nondisclosure, makes it clear that evidence of a compromise or settlement is not admissible "to prove liability for or invalidity of the claim or its amount," but may be admissible for "another purpose," such as proving bias or prejudice of a witness, or negating a contention of undue delay. When evidence of a compromise or settlement is offered for "another purpose," it must, however, satisfy all of the other rules of evidence. This is so because OEC 408(2)(b) states that OEC 408(1) "does not require exclusion," clearly implying that other rules of evidence may.[8] To be admissible, proffered evidence of compromise or settlement offered for "another purpose" must, therefore, be relevant under OEC 401 and must not be barred by OEC 402.[9] Moreover, if the probative value of the compromise or settlement evidence for the purpose it is offered is substantially outweighed by the danger of unfair prejudice, or other factors listed in OEC 403, the trial court may, in its discretion, exclude the evidence.[10]

---

[7] The benefits of such a policy include the reduction of court congestion and of expenditures for courts by unnecessary or protracted litigation.

[8] *See* 23 Wright and Graham, Federal Practice and Procedure: Evidence, 261 and 261 n 2 (1980) (making similar observation as to last sentence in FRE 408, the federal counterpart to OEC 408).

[9] OEC 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law. Evidence which is not relevant is not admissible."

*See State ex rel Juv. Dept. v. Beasley*, 314 Or 444, 449-50, 840 P2d 78 (1992) (discussion of OEC 402).

[10] OEC 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Evidence of plaintiff's settlement with the hospital, offered to satisfy supposed jury curiosity as to why the hospital was not a party defendant in the lawsuit, was not "relevant," as that term is defined in OEC 401 and, therefore, was inadmissible under OEC 402. OEC 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The function of the doctrine of relevancy is to require that there be some rational relationship between the item of evidence offered by a litigant and the legal rule on which that litigant claims a right to recover. 22 Wright and Graham, Federal Practice and Procedure: Evidence 37, § 5164 (1978). As the Legislative Commentary to OEC 401, *reprinted in* Kirkpatrick, *supra*, at 104 (citing James, *Relevancy, Probability and the Law*, 20 Cal L Rev 689, 696 n 15 (1941)), states, " '[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." A decision as to whether an item of evidence is relevant, therefore, depends on the context in which the decision arises and the use that is to be made of the item of evidence in question.

Under OEC 401, an offered item of evidence may be excluded as irrelevant for either of two quite distinct reasons: (1) because it is not probative (*i.e.*, it does not have any tendency to prove or disprove, or to make more probable or less probable) of the fact or proposition at which it is directed, or (2) because that fact or proposition at which the item of evidence is directed is not provable in the case, *i.e.*, is not "of consequence ['material'] to the determination of the action." Whether or not a fact or proposition is provable in the case is determined not by the rules of evidence, but by the applicable substantive law and the pleadings in the case. *State v. Clowes*, 310 Or 686, 691-92, 801 P2d 789 (1990).

In this tort case, based on a claim of negligence, the jury's duty was to decide whether defendant, the non-settling tortfeasor, was liable for plaintiff's decedent's injuries and death and, if so, to find plaintiff's total damages.[11] It was the

---

[11] In its instructions to the jury, the trial court stated, "if your verdict is for the

function of the trial court, on application of defendant after verdict, to reduce the amount of such verdict by the amount of the settlement resulting from the execution of the covenant made by plaintiff with the hospital. Because the court deducts the amount of the settlement from the jury's verdict, there was no need for the jury to have knowledge of the hospital's (the absent joint tortfeasor's) settlement.

Informing the jury of plaintiff's settlement with the hospital *might* have a tendency to satisfy supposed jury speculation as to why the hospital was not a party defendant. But satisfying supposed jury curiosity as to why the hospital was not a party defendant is not in and of itself a fact or proposition that is "of consequence ['material'] to the determination" of plaintiff's tort action against defendant based on negligence and is not a basis for introducing the evidence under OEC 408.[12] In this case, however, the trial judge mentioned the settlement to the jury before any evidence was introduced, *i.e.*, before any context was developed that could have created its relevance.

In its charge to the jury, the trial court told the jury, "Do not decide this case on guesswork, conjecture, or speculation."[13] We presume that juries follow the court's instructions. *DeMaris v. Whittier*, 280 Or 25, 31, 569 P2d 605 (1977); *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 223, 493 P2d 138 (1972) (citing decisions of this court). To inform the jury of plaintiff's settlement with the hospital because the trial court thought that the jury would wonder why the hospital

---

plaintiff, and you find that the plaintiff has been damaged, you are to return a verdict for the full amount of plaintiff's damages."

[12] If satisfying jury curiosity were a proper basis for admitting evidence or informing the jury about a settlement, it would arguably follow that many other items about which the jury might be curious would be admissible for the purpose of satisfying jury curiosity, *e.g.*, information or evidence as to whether a party is or is not insured, information or evidence as to whether a party took subsequent remedial measures to correct a problem, information or evidence as to why an attorney objected to certain evidence or why the judge ruled as he or she did, information or evidence as to what information is redacted from an exhibit admitted in evidence, and information or evidence about what evidence was suppressed. The jury simply must be assumed to follow the instruction that they are not to speculate about those items about which they might be curious.

[13] This quote is now contained in Uniform Civil Jury Instruction 1.01. UCJI No. 1.01 (1992).

was not a party in the case is incongruent with the instruction that the trial court gave and that we presume the jury followed, *i.e.*, not to base its decision on guesswork, conjecture, or speculation.

Admission of information or evidence of settlement to satisfy the jury's supposed curiosity as to why certain persons in a multiple-party situation were not named as defendants in a lawsuit would have the potential to emasculate the rule of exclusion set forth in OEC 408 and thereby to undermine the public policy underlying the rule that favors and encourages compromise and settlement of disputes. Admission of such evidence for such an irrelevant purpose would, for example, discourage parties in multiple-tortfeasor situations from engaging in settlement discussion with one of several jointly and severally liable tortfeasors because they could be prejudiced in other proceedings with the remaining non-settling tortfeasors.

Even if we were to assume, *arguendo*, that evidence of plaintiff's settlement with the hospital offered to satisfy supposed jury curiosity as to why the hospital was not a party defendant was relevant in plaintiff's claim against defendant, whatever probative value such evidence might have was substantially outweighed by the danger of unfair prejudice and other factors set forth in OEC 403.

Withholding from the jury information or evidence concerning a plaintiff's settlement or covenant not to sue or enforce judgment with one or more joint tortfeasors in a trial or proceeding against a remaining joint tortfeasor defendant avoids or reduces potential unfair prejudice to both the plaintiff and the defendant. Informing or allowing evidence of such a settlement or covenant could seriously jeopardize the plaintiff's right to a fair trial. A jury's knowledge of such a settlement or covenant is potentially prejudicial to a plaintiff because the jury may either (1) consider the settlement or covenant as proof that the settling tortfeasor is the responsible party and the remaining defendant should be exculpated, or (2) reduce the plaintiff's award of damages based on a belief that the plaintiff was already compensated by the settlement or covenant.

Where the issue of liability is closely contested, a jury's verdict is not infrequently the result of compromise of the varying views of the jurors. Jurors may agree to a verdict for the defendant on concluding that the plaintiff has already been compensated for her injuries.

Conversely, a settlement with one alleged joint tortfeasor could suggest liability on a non-settling alleged tortfeasor.

Withholding information or evidence of such a settlement or covenant from the jury, however, (1) focuses the jury on the crucial questions of liability and full compensation, (2) prevents the jury from being confused or misled by its knowledge of the settlement or covenant, and (3) promotes fair verdicts that are consistent with the evidence presented.

In sum, information or evidence concerning an out-of-court settlement with one or more tortfeasors who are jointly and severally liable is not admissible for the purpose of satisfying supposed jury curiosity as to why a particular party is not a party defendant in a lawsuit. Such information or evidence is not relevant under OEC 401 and, therefore, is inadmissible under OEC 402. Assuming, *arguendo*, that the evidence is relevant, whatever probative value such evidence may have is substantially outweighed by the potential for unfair prejudice to the parties and the danger of confusing or misleading the jury.

For reasons stated above, the trial court erred in informing the jury of the settlement. That error substantially affected a right of plaintiff. Accordingly, plaintiff is entitled to a new trial. *See* ORS 19.125(2) (before an error can be the basis for appellate reversal of a judgment, it must substantially affect the rights of the party against whom it was given); OEC 103(1) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected").

Fadeley, J., joins in this opinion.

**PETERSON, J.,** concurring in part and dissenting in part.

I concur with the majority except on one point. I dissent from the conclusion that the trial court committed

prejudicial error by advising the jury that plaintiff had settled with the hospital.

Before the trial began, plaintiff filed a motion *in limine*, supported by a memorandum of law. Those documents showed that plaintiff originally had joined Good Samaritan Hospital and Medical Center (hospital) as a defendant, that plaintiff had settled with the hospital and dismissed the hospital from the case. Plaintiff's motion requested that the court order that no reference be made to the settlement, the dismissal of the hospital, or that the hospital had been a defendant in the case.

Before the trial began, there was an extensive discussion between the judge and the lawyers. Defendant wanted to put the settlement in evidence; plaintiff wanted nothing to be said concerning the settlement. Relying on a Court of Appeals decision, *Yardley v. Rucker Brothers Trucking Co.*, 42 Or App 239, 600 P2d 485 (1979), the trial court decided to inform the jury of the settlement.

After the jury was empaneled, the trial judge informed the jury that plaintiff already had reached a settlement with the hospital. The judge told them:

"I want to instruct you there has been a settlement between the plaintiff and Good Samaritan Hospital, and Good Samaritan is no longer in this case.

"Now, jurors, what is important is that you are not to infer from the settlement that the defendant Dr. Irish is or is not liable to the plaintiff. The settlement does not change the legal issues between these parties. It has nothing to do with your function. You're simply being informed of that so you understand why Good Samaritan Hospital is *not involved in* the case at this stage."

At the end of the trial, before the jury retired, he again instructed the jury:

"You are not to infer from the settlement that the defendant Dr. Irish is or is not liable to plaintiff. * * *

"I further instruction [*sic*] that if your verdict is for the plaintiff, and you find that the plaintiff has been damaged, you are to return a verdict for the full amount of plaintiff's damages. Do not reduce the amount of plaintiff's damages, if any, by reason of the settlement."

The majority holds that those instructions constitute reversible error. To reach that result, the majority must conclude (1) that the instruction constituted error; (2) that the error substantially prejudiced the plaintiff; and (3) that the court's other instructions did not cure the prejudice.[1]

The majority relies on two cases that clearly are distinguishable. In *Roe v. Warren*, 243 Or 373, 413 P2d 610 (1966), the court held that it was error to admit evidence that the plaintiff intended to sue a third party. *Fenton v. Aleshire*, 238 Or 24, 393 P2d 217 (1964), was a wrongful death action in which, during argument to the jury, defense counsel stated that the plaintiffs had the option to bring a separate action in the future for pain and suffering. The court held this to be error. In both *Roe* and *Fenton*, the defendants, by informing the jury that each plaintiff had possible *future* claims for more damages, was attempting to persuade the jury to limit the plaintiffs' award of damages. The present case is distinguishable on at least two grounds: The jury was informed about a past settlement, not a possible future claim. And, second, the purpose of informing the jury about the prior settlement was to avoid jury confusion,[2] *not* to suggest that the jury limit its award of damages.

I recognize that a jury instruction concerning a plaintiff's prior settlement may be, in many instances, unfairly prejudicial to a party. In other instances, however, such an instruction may clarify for the jury the murky world of tort law without unfair prejudice to either party. In order to fashion a workable rule, the court should not rely on inapposite case law. The majority has stated a proposition: "[I]n the usual case, it is not proper to inform the jury * * *, unless that information has independent relevance." 316 Or at 414. That provides little guidance to trial court judges who must

---

[1] ORS 19.125(2) provides that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party." An erroneous instruction should not be reversed unless it causes prejudice. *U.S. National Bank v. Boge*, 311 Or 550, 566, 814 P2d 1082 (1991).

[2] The trial court, in ruling on plaintiff's motion to prevent mention of the settlement, stated:

"I understand from your file material here, that the nurses made a sponge count and reported correct to the surgeon, obviously a jury's going to wonder why the hospital's not involved in the case * * *."

decide whether to instruct a jury concerning a plaintiff's settlement with a third party.

I believe that a workable rule should repose some discretion in the trial court judge to decide when an instruction about a prior settlement is appropriate. Two cases from Vermont are instructive. In *Slayton v. Ford Motor Co.*, 140 Vt 27, 435 A2d 946, 947 (1981), the court stated:

> "We declare it to be the policy of the Court henceforth that where there has been a liquidated settlement between one of several defendants and a plaintiff * * * the jury not be informed of such fact, or the sum paid * * *."

Five years later, the Vermont Supreme Court recognized that its holding in *Slayton* was too broad. In *Sampson v. Karpinski*, 147 Vt 315, 515 A2d 1066 (1986), the plaintiff sued three defendants in a product liability action when he drank a bottle of beer filled with lye. Plaintiff settled with the retailer, but the retailer remained a party to the action to pursue its indemnification claim against the manufacturer. The court instructed the jury that a verdict had been directed against the retailer, but that the retailer was remaining as a party for indemnification purposes. The trial court, relying on *Slayton*, refused to instruct the jury about the plaintiff's settlement with the retailer. The Vermont Supreme Court held this to be reversible error, reasoning:

> "By directing a verdict against defendant [retailer] in the manner that it did, the court in effect told the jury that plaintiff's story was true. Further, the court's cautionary instruction as to the limited effect of the directed verdict did little to minimize the prejudicial impact of the statement. * * * The issue of plaintiff's credibility was thus effectively removed from the jury's consideration, to the inevitable prejudice of [the other defendants]." 515 A2d at 1069.

The *Sampson* court held that "the trial court is in the best position in a given case to determine whether, on the circumstances before it, prejudice is more likely to occur by informing the jury of the fact of settlement or by excluding it from its consideration." *Id.* at 1070.

In *Sampson*, the Vermont Supreme Court recognized that, on occasion, *failure* to instruct the jury about a settlement may result in substantial prejudice to one of the parties. The court therefore gave discretion to the trial court

judge to determine when it is necessary to inform the jury about a settlement. I agree with that approach.

The case at bar involves a situation that frequently arises in tort cases. The plaintiff has a claim against two or more persons who are alleged to be joint tortfeasors. The plaintiff settles with one or more of them, leaving the remaining tortfeasor or tortfeasors in the case. When, if ever, should the jury be advised that the plaintiff has settled with one or more persons who are alleged to be joint tortfeasors?

In the abstract the answer is clear. In application, the answer may be not so easy. The correct answer is along these lines: If it is likely that the jury would speculate about the absence of the settling party, and the speculation likely would prevent either or both sides from receiving a fair trial, and if it is likely that the speculation would be eliminated or reduced by an instruction to the jury, the trial court, in its discretion, should appropriately instruct the jury.

When, then, is it likely that the jury would speculate about the claim of a plaintiff against an absent third person, so as to prevent either or both parties from receiving a fair trial? Under what circumstances is it likely that either side would be prejudiced in the absence of an instruction?

The Vermont case cited above, *Sampson v. Karpinski*, is a good example. There, all tortfeasors were before the court, and the plaintiff had settled with the retailer. The trial court properly advised the jury of the fact that the plaintiff had settled with the retailer because the directed verdict against the retailer, in effect, told the jury that the plaintiff's story "was true." 515 A2d at 1069. There, the unfairness to the nonsettling defendants was patent.

That is not the case here. The hospital was out of the case and, so far as the jury was concerned, had not been sued. Is it likely that the jury would speculate to anyone's prejudice concerning the absence of the hospital as a defendant? Nothing in the record tells us much one way or the other. Defendant argues that, in the absence of an instruction, the jury might tend to find liability where none otherwise existed. That argument assumes that juries do not follow instructions. Plaintiff argues (and the majority concludes) that, by telling the jury that plaintiff had settled with the hospital, the

court " 'plant[ed] in the jury's mind the idea that they should allow no damages.' " 316 Or at 415 (quoting *Fenton v. Aleshire, supra*, 238 Or at 28). That argument also assumes that the jury would not and did not follow the trial judge's repeated instructions that the settlement did not change the legal issues, and that the jury should not "reduce the amount of the plaintiff's damages, if any, by reason of the settlement."

The vice of either position is obvious. Both arguments are based on the premise that juries do not follow instructions. Therefore, both positions are flawed, for juries are presumed to follow the court's instructions. *DeMaris v. Whittier*, 280 Or 25, 31, 569 P2d 605 (1977); *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 223, 493 P2d 138 (1972). In *Fulton Ins.*, the trial court erroneously instructed the jury. The court noted that a second instruction was given that negated the error, and concluded that there was no prejudice because "[w]e must presume that the jury followed the court's instructions." 261 Or at 223. In the present case, regardless of that presumption, the instruction concerning the settlement was quite easy for the jury to follow, given that no clear inference can be drawn from the fact of a previous settlement. Even if the trial court committed error by instructing the jury regarding plaintiff's settlement with the hospital, prejudice to plaintiff is doubtful given the court's other instructions.

I maintain that the proper rule is this: In cases involving a plaintiff's claim against two or more alleged joint tortfeasors, if the plaintiff has settled with one or more of the claimed joint tortfeasors and only the nonsettling tortfeasor remains in the case, the trial judge should say nothing about the settlement to the jury unless the record shows that it is likely that the jury would speculate about the absence of one or more parties in the case, to another party's prejudice. That might arise in a variety of ways. One might be that a witness, theretofore adverse to the plaintiff, now is in league with the plaintiff because of a settlement; or it might be shown that a witness' testimony has changed because of the settlement. If it is demonstrated that the settlement may have affected the witness' testimony, it may be proper to receive evidence of the

settlement and instruct the jury accordingly, in language similar to the instruction given here.

This is not the occasion to speculate further as to the cases in which an instruction appropriately might be given. Here, the trial judge was advised, *by plaintiff*, of the settlement, and the trial judge concluded that it would be better to advise the jury of the settlement, as he did. I agree with the majority that it would have been better had the trial judge not done so. I disagree, however, that the error was prejudicial.

In the first section of its opinion, the majority correctly concluded that

> "there was no evidence in this case that the operating room nurses were defendant's agents or employees and, thus, no evidentiary support for giving plaintiff's requested jury instructions on vicarious liability." 316 Or at 413.

If defendant could not be vicariously liable, the only remaining theory of liability in plaintiff's amended complaint is that defendant "fail[ed] to check and determine that all sponges * * * were removed." We must determine, therefore, whether the instructions concerning plaintiff's settlement with the hospital made the jury less likely to find that Dr. Irish failed to check and determine that all sponges were removed; or, stated otherwise, more likely to conclude that even if Dr. Irish breached his duty to plaintiff, the jury nonetheless found for him because of the court's instruction. The majority concludes:

> "In this case, the jury could have been encouraged to conclude that plaintiff had been compensated fully for the claimed injury and thereby could have been distracted from the appropriate line of analysis.

> "After examining the entire record of the trial, we are convinced that the errors, considered cumulatively, were prejudicial. The 'natural tendency [of the court's statement and instruction] was to plant in the jury's mind the idea that they should allow no damages,' *Fenton v. Aleshire, supra,* 238 Or at 28, because plaintiff already was compensated for her loss. Accordingly, we hold that plaintiff is entitled to a new trial." 316 Or at 415.[3]

---

[3] The majority compounds its error by relying on *Honeywell v. Sterling Furniture Co.*, 310 Or 206, 797 P2d 1019 (1990). There, punitive damages were awarded to

The instructions given emphatically and convincingly negate that conclusion. The court instructed the jury "*not* to infer from the settlement that the defendant Dr. Irish is or is not liable to the plaintiff" and that, "if your verdict is for the plaintiff, and you find that the plaintiff has been damaged, you are to return a verdict for the full amount of plaintiff's damages. Do not reduce the amount of plaintiff's damages, if any, by reason of the settlement." The majority apparently believes that the jury disregarded the court's instructions and decided to find defendant not liable even though it believed that he was liable.

I believe that the jury system works best when speculation is minimized. The trial judge apparently concluded that it was likely that the jury would speculate about the role of the hospital and its employees in plaintiff's injury had *no* instruction been given. The trial judge was within permissible bounds of discretion in instructing the jury as it did.

If an erroneous instruction does not cause prejudice, it does not require reversal. *U.S. National Bank v. Boge*, 311 Or 550, 566, 814 P2d 1082 (1991); ORS 19.125(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). OEC 103(1) provides that "[e]vidential error is not presumed to be prejudicial."

The majority's analysis is cursory at best. Even under the majority's independent relevance standard,

the plaintiff following instructions from the trial court to the jury that the punitive damages award would be distributed

" 'as follows: First, the attorney for the prevailing party shall be paid the amount agreed * * *; secondly, one-half of the remainder shall be paid to the prevailing party; third, the other half of the remainder shall be paid to the Criminal Injury [*sic*] Compensation Account * * *.' " 310 Or at 209.

The defendant appealed. This court affirmed a Court of Appeals order of reversal, saying:

"We agree with the Court of Appeals that the potential effect of the instruction was to '[permit] a jury to consider as a part of its deliberations on punitive damages that a plaintiff should receive a certain amount of money and, in order to ensure that he does, to add additional amounts to pay for attorney fees and contributions to the Criminal Injuries Compensation Account.' " *Id.* at 211.

The vice of that instruction is clear. The instruction potentially affected a jury's punitive damages award, based on the distribution of damages. In light of the instructions given by the trial court in this case, I fail to see how its instruction affected the award in this case.

plaintiff was not prejudiced by the jury instructions, and I would reverse the decision of the Court of Appeals. Thus, as to the second part of the opinion, I respectfully dissent.